Opinion issued November 20, 2003





















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-01-00614-CV
____________
 
MARY ANN STRAHAN, Appellant
 
V.
 
BILLY H. STRAHAN, Appellee
 

 
 
On Appeal from the 257th District Court
Harris County, Texas
Trial Court Cause No. 1996-50602
 

 

MEMORANDUM OPINION

          Appellant, Mary Ann Strahan (Mary), challenges the trial court’s order denying
her motion to enforce and clarify the trial court’s divorce decree. The trial court
ordered that Mary take nothing, and it awarded appellee, Billy H. Strahan (Billy),
$7,000 in damages and $28,000 in attorney’s fees.
          In 12 issues, Mary contends that the evidence was legally and factually
insufficient to support the trial court’s awards of damages and attorney’s fees to Billy;
that certain findings and conclusions of the trial court were “erroneous as a matter of
law”; and that the trial court erred in excluding evidence, in denying relief to Mary
on her claims, in failing to clarify the divorce decree, and in making certain
procedural rulings.
          We reverse and render in part and affirm in part.
Facts and Procedural Background
          On July 31, 1995, the trial court signed a final decree, the terms of which were
agreed to by the parties, which granted the parties a divorce and divided their assets
and liabilities.


 In its division of the parties’ marital estate, the trial court awarded
Mary, among other things, ownership of Sharp Color Express, Inc. (Sharp), a printing
and imaging company.
          The trial court awarded Billy, among other things, complete ownership of three
printing and imaging companies: Digital Press Inc. (Digital), Quality Qulor, Inc.
(Quality), and Laserscan, Inc. (Laserscan). Billy was also awarded a 1991 Chevrolet
Blazer and a large, commercial scanner, referred to by the parties as a “HELL
scanner,” which was located on the premises of Sharp. As part of the agreed terms
of the parties’ divorce decree, Billy “promise[d] and warrant[ed]” to remove this
scanner, at his own expense, from the Sharp premises by August 31, 1995.
          The parties each filed a motion to enforce the divorce decree. Mary asked the
trial court to award her the following: (1) $25,236.48 from Billy as rebates owed to
Sharp and collected from a printing supply company; (2) $5,732.93 from Billy as
indemnification owed under the terms of the decree for payments made by Sharp on
a monthly obligation; (3) reimbursement of $660 for her expense incurred in moving
the commercial scanner to Billy’s business premises; and (4) funds received by Billy
as a result of a lawsuit filed against Agfa, a printing supply company.


 Mary also
asked the trial court to clarify a portion of the decree. Following a hearing, the trial
court denied Mary’s claims for enforcement and clarification.
          In his motion, Billy sought enforcement of the provision of the decree awarding
him ownership of the Blazer. The trial court found that Mary had failed to deliver the
Blazer to Billy, and, because Mary had sold the Blazer, the trial court ordered Mary
to pay Billy damages in the amount of $7,000. The trial court also awarded Billy
attorney’s fees in the amount of $28,000.



Billy’s Claim
          In her first and second issues, Mary argues that the evidence was legally and
factually insufficient to support either the trial court’s $7,000 damage award to Billy
or the trial court’s related findings of fact and conclusions of law. In her third issue,
Mary argues that the trial court’s findings and conclusions on this issue were
“erroneous as a matter of law” and “cannot be upheld under any theory” of law.
          We review a trial court’s conclusions of law de novo. In re Moers, 104 S.W.3d
609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). We independently evaluate
conclusions of law to determine their correctness, and we will uphold them on appeal
if the judgment can be sustained on any legal theory supported by the evidence. Id.
          In an appeal of a judgment rendered after a bench trial, the court’s findings of
fact have the same weight as a jury’s verdict, and we review the legal and factual
sufficiency of the evidence used to support them, just as we would review a jury’s
findings. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); In re K.R.P., 80
S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).


 Our review
of a legal sufficiency point requires us to consider only the evidence and inferences
that tend to support the finding, disregarding all evidence and inferences to the
contrary. Vannerson v. Vannerson, 857 S.W.2d 659, 666 (Tex. App.—Houston [1st
Dist.] 1993, writ denied). If there is any evidence of probative force to support the
finding, i.e., more than a mere scintilla, we will overrule the issue. Id. In our review
of the factual sufficiency of the evidence, we must consider and weigh all of the
evidence, and we will set aside a verdict only if the evidence is so weak or if the
finding is so against the great weight and preponderance of the evidence that it is
clearly wrong and unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).
          With regard to the Blazer, the trial court made the following findings of fact:
11.[Mary] has failed to deliver the 1991 Chevrolet Blazer to [Billy]
as ordered, without justification or contractual reimbursement to
[Billy], and has converted such property. [Mary] testified at trial
that she sold the 1991 Chevrolet Blazer to a third party for the
sum of $7,000.00. Delivery of the property is no longer an
adequate remedy and [Mary’s] failure to deliver the property has
caused damage to [Billy] in the amount of $7,000.00.
 
12.[Billy] should be awarded judgment against [Mary] in the amount
of $7,000.00 together with interest at ten percent per year
compounded annually from the date the order is signed.

The trial court also made the following relevant conclusion of law:
 
4.[Billy] should be and is granted judgment against [Mary] for
$7,000.00, such judgment bearing interest at ten percent per year
compounded annually from the date this order is signed, for
which let execution issue.

          Mary argues that the trial court erred in awarding $7,000 in damages to Billy
because the evidence presented at the hearing does not support either the claim for
enforcement of the divorce decree or the elements of a claim for “conversion” of the
Blazer. Additionally, Mary argues that the evidence presented at the hearing was not
legally or factually sufficient to support the trial court’s findings and conclusion on
this issue.
          In addition to awarding Billy full title and ownership of the Blazer, the decree
also provided as follows:
To the extent that either party shall have or receive property or monies
which are herein awarded to the other, IT IS ORDERED AND
DECREED that the receiving party shall be the Constructive Trustee for
the other party of said property or monies and shall within three (3) days
of the receipt thereof, transfer and deliver said property or monies to the
other party at the last known address of the other party.

          Billy filed a “Motion for Enforcement of Decree of Divorce” seeking to have
the trial court order Mary to deliver the Blazer awarded to Billy under the terms of
the decree. In order to enforce its division of property made in a divorce decree, a
trial court may order a party to deliver specific property awarded. Tex. Fam. Code
Ann. § 9.009 (Vernon 1998). If a party has failed to comply with a decree of divorce,
and the delivery of the property awarded in the decree is no longer an adequate
remedy, the trial court may, in addition to other to other legal remedies, render a
money judgment for the damages caused by the party’s failure to comply. Id. § 9.010
(Vernon 1998).
          The evidence was undisputed that the decree awarded full title and ownership
of the Blazer to Billy, that Mary did not deliver the Blazer to Billy, and that Mary
sold the Blazer to a third party for $7,000. Although title to the Blazer remained in
her name following the divorce, Mary testified that she did not have possession of the
Blazer because it was being used by “an employee” in Tennessee.


 Mary argues that,
because she did not personally “possess” the Blazer and because Billy never
demanded that she deliver the Blazer to him, the evidence does not support the trial
court’s findings that she violated the decree.
          In fact, during Billy’s case-in-chief, Mary testified that, sometime in late 1995,
she took physical possession of the Blazer from her employee before selling it. By
the agreed terms of the decree, at the time she did so, she became the constructive
trustee of the Blazer and had a contractual duty to immediately deliver it to Billy and
transfer the title to his name. Instead, Mary sold it to a third party.
          Mary also argues that, pursuant to an oral agreement she made with Billy, she
sold the Blazer with Billy’s permission. Mary testified that, in exchange for letting
her retain the Blazer, Billy agreed to retain some office equipment awarded to her in
the decree. However, Mary admitted that she did not have any documents to
substantiate this claim, and that she later sued Billy for the return of the same
equipment purportedly encompassed by their “trade,” a claim she later abandoned.
          As the fact finder, the trial court was entitled to resolve any conflicts in the
evidence and was free to believe all, part, or none of Mary’s testimony. Munters
Corp. v. Swissco-Young Indus., Inc., 100 S.W.3d 292, 299 (Tex. App.—Houston [1st
Dist.] 2002, pet. dism’d). After reviewing the evidence in support of the trial court’s
findings, disregarding all evidence and inferences to the contrary, we hold that the
evidence was legally sufficient to support the trial court’s finding that Mary violated
the terms of the decree in failing to deliver the Blazer to Billy. Additionally, after
reviewing and weighing all of the evidence presented, we hold that such finding was
not so against the great weight and preponderance of the evidence as to be clearly
wrong and unjust.
          As noted above, because Mary sold the Blazer, the trial court was authorized
to exercise its discretion under the Family Code in awarding Billy money damages
in place of the Blazer. Tex. Fam. Code Ann. § 9.010. Mary argues that “there [wa]s
no evidence of damages” presented here. However, she testified that she sold the
Blazer for $7,000.


 In the absence of any evidence that the actual value of the Blazer
was less than this sale price, we hold that the evidence was legally sufficient to
support the trial court’s findings that delivery of the Blazer was no longer an adequate
remedy at law and that Mary’s failure to deliver the Blazer to Billy caused him to
sustain damages of $7,000. Additionally, we hold that such findings were not so
against the great weight and preponderance of the evidence as to be clearly wrong and
unjust.
          Accordingly, we hold that the trial court did not err in either its order awarding
Billy $7,000 in damages or its findings and conclusion concerning this issue.



          We overrule Mary’s first, second, and third issues.
Attorney’s Fees
          In her fourth and fifth issues, Mary argues that the evidence was legally and
factually insufficient to support either the trial court’s award of attorney’s fees in the
amount of $28,000 or the trial court’s related findings of fact and conclusions of law. 
In her sixth and seventh issues, Mary argues that the trial court’s findings and
conclusions on this issue were “erroneous as a matter of law” and that the award of
attorney’s fees to Billy, in the absence of a proper damage award, was improper and
alternatively, “cannot be sustained under the Family Code nor [sic] under any other
theory.”
          Attorney’s fees may not be recovered from an opposing party unless such
recovery is provided for by statute or by contract. Travelers Indem. Co. v. Mayfield,
923 S.W.2d 590, 593 (Tex. 1996) (orig. proceeding). A marital property agreement
incorporated into a divorce decree is treated as a contract. Allen v. Allen, 717 S.W.2d
311, 313 (Tex. 1986). A trial court may also award reasonable attorney’s fees as
costs in a proceeding to enforce a property division under a divorce decree. Tex.
Fam. Code Ann. § 9.014 (Vernon 1998). A trial court’s decision to grant attorney’s
fees in such a case is reviewed for an abuse of discretion. Kurtz v. Jackson, 859
S.W.2d 609, 612 (Tex. App.—Houston [1st Dist.] 1993, no writ).
          The divorce decree provides, in relevant part, as follows:
The parties have consented to the terms of this Final Consent Decree of
Divorce and Judgment. Accordingly, this Final Consent Decree of
Divorce and Judgment shall be binding both as a contract and an Order
or Judgment, and all provisions thereof may be enforced as a contract
between the parties . . . . The parties further agree and stipulate that, if
a party defaults in performing any of that party’s obligations under this
‘Final Consent Decree of Divorce and Judgment,’ the party obligee shall
be entitled to recover from the defaulting party all reasonable attorney’s
fees, Court costs, and other expenses the party obligee may incur in
enforcing performance by the defaulting party.

          As noted above, the evidence presented was legally and factually sufficient to
support the trial court’s order and findings that Mary failed to comply with the
parties’ agreed property division by not delivering the Blazer to Billy and that, as a
result, Billy sustained damages of $7,000. Because Mary did not comply with her
contractual obligation, we hold that the trial court did not abuse its discretion in
finding that Billy was entitled to the recovery of attorney’s fees in his action to
enforce the parties’ agreed property division.
          With regard to the amount of attorney’s fees awarded, the trial court found that
Billy had incurred, and was entitled to recover, $28,000 as “reasonable and
necessary” attorney’s fees, and, in its conclusions of law, the trial court awarded Billy
such fees. The record reflects that, in open court, counsel for Mary stated that, “[W]e
have both agreed as to the attorneys’ fees that were reasonable and necessary for the
pursuit of this case and that all other qualifications and all other necessary elements
of proof have been made and agreed upon.”
          Because the parties stipulated as to the reasonable nature and amounts of their
respective fees, we hold that Mary waived any challenge to the sufficiency of the
evidence to support the trial court’s order, findings, and conclusions concerning the
amount of attorney’s fees awarded. Tex. R. App. P. 33.1.
          We overrule Mary’s fourth, fifth, sixth, and seventh issues.
Mary’s Claims
          In her ninth issue, Mary argues that the trial court’s denial of relief on the
following claims was “erroneous as a matter of law” or, alternatively, “against the
great weight and preponderance of the evidence”: (1) $25,236.48 of what she
contends were “rebates” owed to Sharp that were collected from printing suppliers,
(2) reimbursement of $5,732.93 in payments that Mary made on an obligation owed
by Billy, (3) reimbursement of $660 in expenses that she incurred to move the
scanner awarded to Billy, and (4) a portion of the settlement proceeds from Billy’s
suit against Agfa. In her eighth issue, Mary argues that the trial court erred in
excluding certain exhibits offered in support of her claims.
          In denying Mary’s claims for relief, the trial court made no specific findings
of fact or conclusions of law, but stated simply that “[Mary] failed to present any
competent evidence to support her other claims and/or causes of action and they
should be denied.”
          When a party attacks the legal sufficiency of an adverse finding on an issue on
which she had the burden of proof, she must demonstrate on appeal that the evidence
established, as a matter of law, all vital facts in support of the issue. Dow Chem. Co.
v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a “matter of law”
challenge, we must first examine the record for evidence that supports the finding,
while ignoring all evidence to the contrary. Id. If there was no evidence to support
the finding, we must then examine the entire record to determine if the contrary
proposition was established as a matter of law. Id. We will sustain the point of error
only if the contrary proposition was conclusively established. Id.
          When a party attacks the factual sufficiency of an adverse finding on an issue
on which she had the burden of proof, she must demonstrate on appeal that the
adverse finding was against the great weight and preponderance of the evidence. Id.
at 242. We must consider and weigh all of the evidence, and we can set aside a
verdict only if the evidence was so weak or if the finding was so against the great
weight and preponderance of the evidence that it was clearly wrong and unjust. Id.
          We will address each of Mary’s claims in turn.
$25,236.48 in Rebates
          The divorce decree granted Mary exclusive ownership of Sharp, including “all
cash, money sums owed to Sharp, contract rights of Sharp, accounts receivable of
Sharp, goodwill of Sharp, and claims . . . belonging to Sharp” as of May 24, 1995. 
Mary argues that she was entitled to recover, from Billy, $25,236.48, which she
contends was a rebate paid to Billy’s company, Digital, that was, in fact, owed to
Sharp.
          Bennett Greenspan, the former owner of Industrial Photographic Supplies
(IPS), testified that, between 1990 and 1994, his company frequently procured rebates
for equipment and supplies purchased from product manufacturers, such as Agfa, and
forwarded them to the parties’ printing companies. A canceled check from IPS to
Digital, dated May 15, 1995, and totaling $101,434.56, was introduced into evidence. 
Greenspan testified that $25,236.48 of the amount of the check was for “rebates”
issued by Agfa and owed to Sharp. Greenspan testified that this amount was owed
as a result of purchases made by the parties’ companies in 1994, and that the check
was issued and hand-delivered to Billy on or about May 15, 1995.
          However, during cross-examination, Greenspan admitted that the payee of the
check was Digital, not Sharp, and that the memo line of the check reads, “Total
refund of Contex/SGI System paid by Billy Strahan.” Greenspan explained that his
company delivered the check to Digital as a “refund” because Billy had purchased
approximately $101,000 worth of software and equipment from IPS and had been
unsatisfied. Greenspan then described the check as a “refund” for “all the moneys
from all the sources that had been used by Mr. Strahan to pay us.”
          As noted above, the trial court, as fact finder, was entitled to resolve conflicts
in the evidence. Munters Corp., 100 S.W.3d at 299. Here, the trial court was
presented with conflicting evidence from the same witness concerning the source of
the funds and the purpose of the check and, as fact finder, determined that Mary, as
owner of Sharp, was not owed any portion of the May 15, 1995 check as an unpaid
rebate.
          Based on the record presented, we hold that the evidence was legally sufficient
to support the trial court’s ruling that $25,236.48 of the May 15, 1995 IPS check to
Digital was not an unpaid rebate owed to Sharp, and we further hold that the evidence
was factually sufficient to support the trial court’s decision to deny this claim because
the ruling was not against the great weight and preponderance of the evidence.
          We overrule Mary’s ninth issue as to her claim for rebates in the amount of
$25,236.48.
$5,732.93 Reimbursement
          Mary argues that she was entitled to recover, from Billy, $5,732.93 as a
reimbursement for her payments on a monthly obligation identified in the divorce
decree only as the “Select Set 5,000,” for which Mary contends Billy was required to
indemnify her, pursuant to the terms of the decree.
          The relevant provision of the decree reads as follows:
[Mary] will pay any and all debts, charges, and liabilities and other
obligations pursuant to the “Select Set 5,000”obligation which is now
payable at $2,751.17 per month, and will be assumed by Sharp. [Billy]
will indemnify [Mary] and Sharp from liability for payments prior to
May 1995, if not paid.

          Mary concedes that, “under the questioning of opposing counsel,” she admitted
that only $2,751.17 of the $5,732.93 that she argued she paid was actually for the
monthly Select Set obligation. Additionally, we note that, during argument to the
trial court, Mary’s counsel conceded that she sought reimbursement of only one
month’s payment, $2,751.17, under this provision of the divorce decree.
          During her testimony, Mary admitted that she could not produce a canceled
check or other documentation to show that she had, in fact, paid this or any amount
on the Select Set obligation. Nor did she testify concerning the date that she made
such payment, or the month for which such payment was owed.
          Based on the record presented, we hold that the evidence was legally sufficient
to support the trial court’s ruling that Mary was not entitled to indemnification from
Billy on the Select Set obligation, and we further hold that the evidence was factually
sufficient to support the trial court’s decision to deny this claim because the ruling
was not against the great weight and preponderance of the evidence.
          We overrule Mary’s ninth issue as to her claim for a reimbursement in the
amount of $5,732.93.
$660 Moving Expenses
          As part of her ninth issue, Mary also argues that she was entitled to recover,
from Billy, the sum of $660 that she incurred to pay to move the scanner awarded to
Billy. As part of her eighth issue, Mary argues that the trial court improperly
excluded evidence offered in support of this claim. We review a trial court’s
evidentiary rulings for abuse of discretion. Owens-Corning Fiberglas Corp. v.
Malone, 972 S.W.2d 35, 43 (Tex. 1998).
          As noted above, the decree required that the scanner be removed from Mary’s
premises by August 31, 1995, at Billy’s expense. Mary testified that the scanner was
located at her place of business, and that Billy faxed her a signed letter on August 25,
1995, authorizing her to allow a moving company to move the scanner. Mary
testified that Billy caused the scanner to be removed from her premises, but because
Billy was not available when she called him to bring a check for the moving
company, she paid the movers. When Mary attempted to introduce into evidence
copies of the letter, the invoice from the moving company, and her canceled check
made payable to the moving company in the amount of $660, Billy objected to these
exhibits as hearsay, and the trial court sustained Billy’s objections and excluded the
exhibits.


 The exhibits were then submitted as bills of exception.
          The rules of evidence permit the admission of business records kept in the
course of regularly conducted activities. Tex R. Evid. 803(6). To be properly
admitted under rule 803(6), the proponent must prove that the document was made
at or near the time of the events recorded, from information transmitted by a person
with knowledge of the events, and made or kept in the course of a regularly
conducted business activity. Id. We hold that Mary’s check to the moving company
qualified as a business record under rule 803(6) because Mary testified that she wrote
it at the time the movers removed the scanner, she had personal knowledge of its
making and its purpose, and the check was written and kept in the regular course of
her business. See LaFreniere v. Fitzgerald, 669 S.W.2d 117, 118-19 (Tex. 1984)
(holding canceled checks admissible as business records). Accordingly, we hold that
the trial court abused its discretion in excluding the check, movant’s exhibit number
5, from evidence.
          The rules of evidence also provide that the oral or written admissions of a
party-opponent are not hearsay. Tex R. Evid. 801(e)(2)(A); Port Neches ISD v.
Soignier, 702 S.W.2d 756, 757 (Tex. App.—Beaumont 1986, writ ref’d n.r.e.)
(holding letter from party-opponent constituted admission). Accordingly, we hold
that movant’s exhibit number 5A, Billy’s letter authorizing Mary to allow the movers
to remove the scanner, was not hearsay, and that the trial court abused its discretion
in excluding the letter.
          The August 25th letter specifically authorized Mary to allow the moving
company to remove the scanner from Sharp’s premises and take it to a warehouse,
where Billy would take possession of it. The check to pay the movers was signed by
Mary, was made payable to “Rex Machinery Movers, Inc.” in the amount of $660,
and, in the memo section, reads “moving HELL Scanner.” We hold that this
evidence, combined with Mary’s testimony on this issue, was sufficient to support her
claim for reimbursement of the $660 under the terms of the parties’ divorce decree,
and, because none of the other testimony or evidence presented rebutted this claim,
Mary’s established her right to recover on this claim as a matter of law.
          We sustain Mary’s eighth issue concerning the trial court’s ruling to exclude
the portions of exhibits 5 and 5A noted above. Accordingly, we further sustain
Mary’s ninth issue as to her claim for $660 for expenses incurred to move the
scanner.
Settlement Funds from Agfa
          Mary argues that she was entitled to recover, from Billy, $205,000 in
settlement funds received by Billy, Quality, and Digital as a result of the settlement
of their lawsuit against Agfa.


 Specifically, Mary argues that the entire amount of the
settlement, which Agfa paid into the registry of the trial court presiding over the
lawsuit, constituted unpaid “rebates” owed to Sharp. The bulk of these funds were
distributed by order of that trial court to Billy, Quality, and Digital. However, $6,250
of these funds was also distributed to Billy, “as Assignee of [Sharp].”
          Mary bases her claim to the settlement funds on the following provision of the
divorce decree:
[Billy], Digital, [Quality], and [Laserscan], reserve any claim they may
have or which Sharp, may have against First Interstate Bank, IPS,
[Agfa], Bayer Financial, accounting firms, insurance companies or any
vendor/supplier of Sharp previous to May 24, 1995, and specifically
reserve the right to bring such actions or to require assignment thereof
from [Mary] and Sharp, to [Billy] or his nominee without recourse upon
Sharp or [Mary]. Any monies received from [Agfa] or other entities
listed in this paragraph, after July 31, 1995, is awarded to [Billy]
(excluding unpaid rebates).

(Emphasis added.)
          Aside from Mary’s bare testimony, there is no evidence in the record to support
her claim that the settlement funds consisted entirely of “unpaid rebates” owed to
Sharp. As part of her eighth issue, Mary also argues that, had the trial court properly
admitted into evidence copies of the pleadings from the Agfa lawsuit that she offered
as exhibits, such evidence would have supported her claim to the settlement funds.
          We disagree. A review of the “Ninth Amended Original Petition” filed by
Billy, Quality, and Digital in the Agfa lawsuit indicates that the causes of action
brought against Agfa in that proceeding included the following: a claim by Sharp that
Agfa overcharged for equipment and supplies; claims by Sharp, Quality, and Digital
that Agfa sold them defective proofing and processing systems; a claim that Agfa
failed to deliver a proofing system as ordered; claims by Digital for rebates owed on
supplies and failure to ship supplies; and a claim by Sharp that Agfa owed it
commissions on sales of proofing and processing systems Agfa made to other
companies, based on recommendations by Sharp. Thus, the pleading from the lawsuit
indicate that several claims were alleged against Agfa for recovery of various
damages other than rebates owed to Sharp. Moreover, these pleadings, as well as the
trial court’s order distributing the settlement funds, do not indicate that, at the time
that Agfa and the other defendants in the lawsuit settled the claims brought against
them, the parties attempted to characterize the settlement proceeds or limit or describe
the specific claims being settled.


 Accordingly, we hold that, without deciding
whether the trial court erred in excluding from evidence the pleadings from the Agfa
lawsuit Mary offered as exhibits, any such error was harmless.
          Based on the record presented, we hold that the evidence was legally sufficient
to support the trial court’s ruling that Mary was not entitled to the settlement funds
from the Agfa lawsuit, and we further hold that the evidence was factually sufficient
to support the trial court’s decision to deny this claim because the ruling was not
against the great weight and preponderance of the evidence.
          We overrule Mary’s ninth issue as to her claim for a portion of the settlement
funds from the Agfa lawsuit.
Motion to Clarify
          In her tenth issue, Mary argues that the trial court erred in denying her motion
to clarify a provision of the parties’ divorce decree as it related to the settlement
proceeds from the Agfa lawsuit. A court may render orders to enforce the division
of property made in the decree of divorce or to clarify the prior order. Tex. Fam.
Code Ann. § 9.006 (Vernon 1998).
          Mary argues that the following provision of the decree is ambiguous:
[Billy], Digital, [Quality], and [Laserscan], reserve any claim they may
have or which Sharp, may have against First Interstate Bank, IPS,
[Agfa], Bayer Financial, accounting firms, insurance companies or any
vendor/supplier of Sharp previous to May 24, 1995, and specifically
reserve the right to bring such actions or to require assignment thereof
from [Mary] and Sharp, to [Billy] or his nominee without recourse upon
Sharp or [Mary]. Any monies received from [Agfa] or other entities
listed in this paragraph, after July 31, 1995, is awarded to [Billy]
(excluding unpaid rebates).

(Emphasis added.)


 Mary sought clarification from the trial court concerning
whether, by this provision, she was entitled to the settlement proceeds obtained by
Billy, Quality, and Digital in the lawsuit against Agfa.
          The trial court ruled that this provision contained no ambiguity. Because the
parties agreed to be contractually bound to the agreed terms of the decree, including
the provision at issue, we review the trial court’s determination that the provision at
issue was not ambiguous in the same manner as we would review a similar ruling on
any other contractual provision. Whether a contract is ambiguous is a question of law
for the court to decide by looking at the contract as a whole in light of the
circumstances present when the contract was entered. Kelley-Coppedge, Inc. v.
Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). Only when, after applying the
applicable rules of construction, a contract term is susceptible of two or more
reasonable interpretations will the term be considered ambiguous. Id. at 465.
          Despite her claim that this provision is ambiguous and requires clarification,
during her cross-examination testimony, Mary engaged in the following exchange
with Billy’s counsel:
Q:No. I’m asking you what you think is ambiguous.
 
A:Well, if you look at it, the way it is the only thing that’s
ambiguous right here is that line where it says, “Excluding
rebates.” With a line. There was a word in there that they
couldn’t interpret. That’s what I think is ambiguous. Which we
now have identified as being “unpaid rebates.”
 
Q:Okay. So there is nothing ambiguous now that you know what
that word is; is that right?
 
A:Right, as far as reading it.

          From this testimony, it is evident that, once the handwritten portion of the
provision concerning “unpaid rebates” was identified for her, Mary no longer
considered it ambiguous. Mary has also not shown that, on its face, this provision
contains an inherent ambiguity, or that it is ambiguous when read or applied in
conjunction with any other provisions of the decree. Moreover, as noted above, the
trial court did not err in ruling that Mary was not entitled to the settlement proceeds
of the Agfa lawsuit.
          Accordingly, we hold that the trial court did not err in determining that this
provision was not ambiguous and in denying Mary’s motion for clarification. We
overrule Mary’s tenth issue.
Trial Amendment
          In her eleventh issue, Mary argues that the trial court erred in refusing to grant
her leave to amend her pleadings. During the hearing, Mary’s counsel requested
leave to amend her pleadings to include a claim for rebates owed to Mary or Sharp
from the Agfa litigation. Mary’s counsel subsequently acknowledged that he had, in
fact, included such a claim in the pleadings filed on Mary’s behalf.
          Pleadings may be amended within seven days of trial, only upon leave of the
trial court. Tex. R. Civ. P. 63. Here, Mary’s counsel acknowledged that a claim for
rebates from the Agfa litigation was presented in her pleadings. Therefore, there was
no need for a trial amendment, and the trial court did not err in denying Mary’s
motion to amend.
          We overrule Mary’s eleventh issue.
Additional Evidence
          In her twelfth issue, Mary argues that the trial court erred in refusing to allow
her to offer rebuttal testimony, or alternatively, to re-open her case-in-chief.
          A party has a right to present rebuttal testimony at trial. Tex. R. Civ. P. 265(f). 
In addition, when it “clearly appears to be necessary to the due administration of
justice,” a trial court may permit a party to offer other additional evidence. Tex. R.
Civ. P. 270. We review a trial court’s decisions to deny a party’s motion to offer
rebuttal or other additional evidence for abuse of discretion. See In re Hawk, 5
S.W.3d 874, 877-78 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (motion to re-open); Stevenson v. Koutzarov, 795 S.W.2d 313, 318 (Tex. App.—Houston [1st Dist.]
1990, writ denied) (motion to offer rebuttal testimony).
          Mary argues that the trial court abused its discretion in refusing to permit her
counsel to recall Mary to testify, after Mary had rested, “in light of the fact that she
wanted to explain the very answers that [Billy’s] counsel had elicited from her.” 
Mary also argues that she sought to re-open her case-in-chief because the trial court
erroneously “denied” her bill of exceptions as to two exhibits and refused to permit
her to re-open her case-in-chief so as to “perfect” her offer of proof concerning
several other excluded exhibits.
          The record does not support Mary’s contention that she sought to “rebut”
testimony or evidence offered by Billy. Rather, Mary sought leave from the trial
court merely to explain testimony she gave during her cross-examination. With
regard to Mary’s motion to re-open and offer additional testimony as to excluded
exhibits, Mary has not shown why she was unable to properly present such evidence
during her case-in-chief. Nor has she demonstrated, and the record does not indicate,
that it was “clearly . . . necessary to the due administration of justice” for the trial
court to grant the motion to re-open. See Tex. R. Civ. P. 270.
          Accordingly, we hold that the trial court did not abuse its discretion in denying
Mary’s request to offer what she contends was rebuttal evidence or, alternatively, to
re-open her case-in-chief. We overrule Mary’s twelfth issue.
Conclusion
          We reverse the trial court’s order denying Mary’s claim for $660 as
reimbursement for the expenses she incurred in paying to move the scanner, and we
render judgment for Mary that she recover $660 from Billy, plus all appropriate pre-
and post-judgment interest.


 We affirm all remaining portions of the trial court’s
order.
 

                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Hedges, Jennings, and Alcala.