Opinion issued July 22, 2004




















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00843-CV
____________
 
HOMER H. JACKSON JR., Appellant
 
V.
 
MICHAEL W. HENDERSON, Appellee
 

 
 
On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2000-04190
 

 
 
MEMORANDUM OPINION
          Appellant, Homer H. Jackson Jr. (Jackson), challenges the trial court’s
judgment, rendered following a bench trial, in favor of appellee, Michael W.
Henderson (Henderson), in Henderson’s suit for breach of contract, fraudulent
inducement, and negligent misrepresentation. In six issues, Jackson contends that (1)
Henderson had no viable cause of action against him, (2) the evidence was legally and
factually insufficient to show that “Henderson suffered any loss caused by him,” (3)
the trial court erred in basing its damage award upon a “mere anticipated sale,” (4)
Henderson’s contract and tort claims were barred by the applicable statutes of
limitations, (5) the evidence was legally and factually insufficient to support the trial
court’s finding that Jackson had committed fraud, and (6) the evidence was factually
insufficient to support the trial court’s damage award.
          We reverse the judgment of the trial court, and we render judgment that
Henderson take nothing by way of his suit.
Facts
          On August 6, 1974, 22 venturers executed a joint venture agreement (the
original venture agreement) creating Landmark 80 Venture (Landmark Venture), a
Texas joint venture, for the purpose of acquiring, developing, and then selling an 80-acre tract of land located in Fort Bend County. The original venture agreement
provided that Landmark Venture would exist for a period of 25 years and would
expire on April 30, 1999. It also provided that Landmark Equities Investment and
Management Corporation (Landmark Corp.) had “the exclusive right to sell, lease or
otherwise dispose of all or any part of the [tract]” and that, upon the sale of the tract,
Landmark Venture would pay Landmark Corp. 10 percent of any net profit realized
from the sale and six percent of the purchase price as a real estate commission.
          On October 11, 1974, Jackson, as president of Landmark Corp., assigned to
Henderson a “7.625” percent interest in Landmark Corp.’s right to receive 10 percent
of any net profit realized from the sale of the tract.
          On February 22, 1982, Landmark Corp. forfeited its corporate charter by failing
to pay past due franchise taxes. Thereafter, on June 1, 1982, Jackson, acting
individually and on behalf of Landmark Corp., assigned to Henderson a 20 percent
interest both in Landmark Corp.’s right to receive 10 percent of any net profit realized
from the sale of the tract and its right to receive six percent of the purchase price as
a real estate commission. In consideration thereof, Henderson assigned all of the
stock that he owned in Landmark Corp. to Jackson. The written assignment
agreement provided that Jackson had a duty to notify Henderson of any “event of
default, bankruptcy, or other legal proceedings, actions or events” that would
jeopardize Landmark Corp.’s “interest or rights with respect to” Landmark Venture. 
At the time of the assignment, Henderson, although an officer of Landmark Corp., did
not know that the corporation had forfeited its charter.
          On April 20, 1999, as Landmark Venture was about to expire, the venturers
executed an amendment to and ratification of the original venture agreement (the new
venture agreement). The new venture agreement provided that Landmark Venture
would continue to exist for another 10 years. Moreover, it contained a provision that
specifically “delete[d] Paragraphs 2.002c and 2.002d,” which were the provisions of
the original venture agreement providing that Landmark Corp. had “the exclusive
right to sell, lease or otherwise dispose of” the tract and that Landmark Venture, upon
the sale of the tract, would pay Landmark Corp. 10 percent of any net profit realized
from the sale and six percent of the purchase price as a real estate commission. 
Additionally, the new venture agreement contained a provision specifying that the
original venture agreement “as hereby amended is hereby ratified and reaffirmed.”
          On January 31, 2000, in anticipation of a sale of the tract, Henderson filed suit
against Landmark Venture, the individual venturers, Landmark Corp., and Jackson
seeking a declaration that Henderson was entitled to receive his assigned
compensation upon the sale’s occurrence. Thereafter, on June 29, 2001, Henderson
amended his pleadings to allege specific claims against Jackson arising out of the
June 1, 1982 assignment, seeking “to recover from Jackson the amount [Henderson]
would have been owed by the Venture if the June 1, 1982, assignment was
enforceable against the Venture.” Specifically, Henderson alleged that Jackson (1)
had fraudulently induced him to enter into the assignment because Jackson had failed
to disclose that Landmark Corp. had forfeited its charter, (2) engaged in negligent
misrepresentation because Jackson had failed to disclose that Landmark Corp. had
forfeited its charter, and (3) breached a contractual duty to him because Jackson had
failed to notify him, following the assignment, that Landmark Corp. had forfeited its
charter. Henderson subsequently settled with Landmark Venture and the individual
venturers and non-suited them from the case. However, Henderson did not settle with
Jackson, and the case proceeded to trial.



          Following trial, the trial court rendered judgment in favor of Henderson and
awarded him $12,042.50 in damages and $4,250 in attorney’s fees. Moreover, in its
findings of fact and conclusions of law, the trial court found that (1) Jackson
fraudulently induced Henderson to enter into the assignment on June 1, 1982 because
Jackson knew that Landmark Corp. had forfeited its charter and he had failed to
disclose that fact to Henderson, (2) Jackson “breached the contract he entered into on
June 1, 1982,” and (3) because of Jackson’s breach of contract and fraudulent
inducement, Henderson had suffered actual damages in the amount of $12,042.50.



Fraudulent Inducement
          In his fifth issue, Jackson argues that the evidence was legally and factually
insufficient to support the trial court’s finding that he fraudulently induced Henderson
to enter into the June 1, 1982 assignment. Specifically, Jackson asserts that “no
evidence was offered to show that [he] knew the charter had been forfeited” at the
time of the assignment. Jackson further asserts that, although evidence of silence may
constitute fraud, “his silence [did] not rise to the level of actionable conduct.”
          In its findings of fact and conclusions of law, the trial court found, in part, as
follows:
5. . .. . . that on June 1, 1982, when [Jackson] entered into the
[assignment] . . . he knew that the charter of [Landmark Corp.]
had been forfeited, and he failed to advise [Henderson] that the
charter of [Landmark Corp.] had been forfeited. 
          . . . .
 
7.. . . that because [of] Jackson’s fraudulent inducement and
fail[ure] to disclose that the charter of [Landmark Corp.] had been
forfeited, [Henderson] has been damaged.

          In an appeal of a judgment rendered after a bench trial, the trial court’s findings
of fact have the same weight as a jury’s verdict, and we review the legal and factual
sufficiency of the evidence used to support them, just as we would review a jury’s
findings. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); In re K.R.P., 80
S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). When
challenged, a trial court’s findings of fact are not conclusive if, as in the present case,
there is a complete reporter’s record. In re K.R.P., 80 S.W.3d at 673. Our review of
a legal sufficiency point requires us to consider only the evidence and inferences that
tend to support a finding, disregarding all evidence and inferences to the contrary. 
Vannerson v. Vannerson, 857 S.W.2d 659, 666 (Tex. App.—Houston [1st Dist.]
1993, writ denied). If there is any evidence of probative force to support the finding,
i.e., more than a mere scintilla, we will overrule the issue. Id. In our review of the
factual sufficiency of the evidence, we must consider and weigh all of the evidence,
and we will set aside a verdict only if the evidence is so weak, or if the finding is so
against the great weight and preponderance of the evidence, that it is clearly wrong
and unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).
          A party claiming fraudulent inducement must prove (1) a material
misrepresentation, (2) which was false, (3) which was either known to be false when
made or was asserted without knowledge of its truth, (4) which was intended to be
acted upon, (5) which was relied upon, and (6) which caused injury. Formosa
Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc., 960 S.W.2d 41, 47 (Tex.
1998). Silence is equivalent to a false representation where circumstances impose a
duty to speak and one deliberately remains silent. Spoljaric v. Percival Tours, Inc.,
708 S.W.2d 432, 435 (Tex. 1986). A duty to disclose may arise where (1) there is a
fiduciary relationship, (2) one voluntarily discloses partial information, but fails to
disclose the whole truth, (3) one makes a representation and fails to disclose new
information that makes the earlier representation misleading or untrue, or (4) one
makes a partial disclosure and conveys a false impression. Hoggett v. Brown, 971
S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).
          In regard to the legal sufficiency of the evidence to support the trial court’s
finding that Jackson fraudulently induced Henderson to enter into the assignment, we
can find nothing in the record to indicate that Jackson deliberately remained silent
about the fact that Landmark Corp. had forfeited its charter. Although Jackson
admitted that, as President, he was “obligated” to ensure that Landmark Corp. paid
its franchise taxes, he specifically testified that, at the time of the assignment, he did
not know that Landmark Corp. had forfeited its charter. Moreover, there is no
evidence in the record that, at the time of the assignment, Jackson knew that
Henderson did not know that Landmark Corp. had forfeited its charter. If Jackson
was unaware of the fact that Henderson did not know that Landmark Corp. had
forfeited its charter, then Jackson could not have deliberately remained silent. 
Accordingly, we hold that the evidence was legally insufficient to support the trial
court’s finding that Jackson fraudulently induced Henderson to enter into the
assignment.
          We sustain Jackson’s fifth issue.
Causation
          In his second issue, Jackson contends that the evidence was legally and
factually insufficient to show that “Henderson suffered any loss caused by him.” We
construe Jackson’s contention to be a challenge to the trial court’s finding that,
because of Jackson’s breach of contract and fraudulent inducement, Henderson
suffered actual damages. Having concluded that the evidence was legally insufficient
to support the trial court’s finding that Jackson fraudulently induced Henderson to
enter into the assignment, we address only whether the evidence was legally and
factually sufficient to support the trial court’s finding that Jackson’s alleged breach
of contract caused Henderson to suffer actual damages.
          In this regard, the trial court found, in part, as follows:
8.. . . that [Jackson] breached the contract he entered into on June
1, 1982 with [Henderson].
 
9.. . . that [Henderson] has been damaged in the amount of
$12,042.50 in actual damages because of Jackson’s breach of
contract and fraudulent inducement.
 
10.The damages were determined by calculating an amount equal to
.475% of the ‘net profit’ as determined under the [Landmark
Corp.] Joint Venture Agreement, dated August 6, 1974, plus an
amount equal to .6% of the projected sales price of the land
owned by [Landmark Venture]. 

          Jackson asserts that the trial court awarded Henderson the amount “that he
would have been owed under the assignment of June 1, 1982, if the assignment had
been valid.” Jackson further asserts that, by awarding this amount, the trial court
found that, “as a result of [Jackson’s] actions, . . . Henderson lost the assigned
compensation he would otherwise have received.” Jackson argues that the evidence,
however, showed that, even if the assignment had been valid, Henderson would not
have been entitled to receive any assigned compensation from Landmark Corp.
because (1) Landmark Corp. failed to sell the tract of land “during the 25-year term
of the [original venture] agreement under which the commissions were payable” and
(2) the venturers, in the new venture agreement, specifically deleted the provisions
of the original venture agreement assigning Landmark Corp. 10 percent of any net
profit realized from the sale of the tract and six percent of the purchase price as a real
estate commission. Jackson concludes, thus, that there was no evidence that he had
caused Henderson to lose any assigned compensation from Landmark Corp. based on
the June 1, 1982 assignment.
          In response to Jackson’s argument, Henderson asserts that he could not collect
any assigned compensation from Landmark Corp. because “the assignment was made
after the Landmark [Corp.] charter was forfeited.” Henderson further asserts that “the
forfeiture was caused by Jackson’s failure to meet his obligation to see that the
franchise taxes of Landmark were paid.” Henderson concludes that, if Landmark
Corp. had been in “good standing,” the contract between Landmark Venture and
Landmark Corp. would have been enforceable because Landmark Venture had “an
obligation to include [in the new venture agreement] the terms and conditions of the
1974 joint venture agreement.”
          In a cause of action for breach of contract, a plaintiff can recover actual
damages that are the natural, probable, and foreseeable consequence of the
defendant’s conduct. Mead v. Johnson Group, Inc., 615 S.W.2d 685, 687 (Tex.
1981). However, if a plaintiff fails to establish a causal connection between an
alleged breach and any alleged damages resulting therefrom, he may not recover. See
Delaney v. Davis, 81 S.W.3d 445, 449 (Tex. App.—Houston [14th Dist.] 2002, no
pet.).
          In regard to the legal sufficiency of the evidence to support the trial court’s
finding that Jackson’s alleged breach of contract caused Henderson to suffer actual
damages, we can find nothing in the record to indicate that Jackson’s failure to notify
Henderson that Landmark Corp. had forfeited its charter caused Henderson to suffer
damages. Instead, assuming that Jackson had notified Henderson and that the
assignment had been valid, Henderson would still not have been entitled to receive
the amount that Landmark Corp. had assigned to him because Landmark Corp.,
Henderson’s assignor, was not entitled to receive any payments from Landmark
Venture. An assignee obtains only the right, title, and interest of his assignor at the
time of the assignment, and no more. State Fidelity Mortgage Co. v. Varner, 740
S.W.2d 477, 480 (Tex. App.—Houston [1st Dist.] 1987, writ denied). Here,
Landmark Corp. was not entitled to receive anything from Landmark Venture because
(1) Landmark Corp. did not sell the tract of land during the 25-year period when the
original venture agreement was operative and (2) the venturers, in the new venture
agreement, specifically deleted the paragraph of the original venture agreement
providing that Landmark Corp. had “the exclusive right to sell, lease or otherwise
dispose of” the tract and that Landmark Venture, upon the sale of the tract, would pay
Landmark Corp. 10 percent of any net profit realized from the sale and six percent of
the purchase price as a real estate commission. Although Henderson asserts that the
venturers had “an obligation to include the terms and conditions of the 1974 joint
venture agreement” in the new venture agreement, there is no evidence in the record
that Jackson played any role in the venturers’ decision to delete the compensation
provisions from the new venture agreement. Therefore, Jackson cannot be held liable
for the venturers’ decision.
          Accordingly, because there was no evidence of a causal connection between 
Jackson’s alleged breach of contract and Henderson’s alleged damages, we hold that
the evidence was legally insufficient to support the trial court’s finding that Jackson’s
alleged breach of contract caused Henderson to suffer actual damages.
          We sustain Jackson’s second issue.
Conclusion
          Having sustained Jackson’s fifth and second issues, which dispose of the
appeal, we need not reach Jackson’s first, third, fourth, and sixth issues. Because the
evidence was insufficient to support Henderson’s fraudulent inducement claim and
breach of contract claims, we reverse the judgment of the trial court, and we render
judgment that Henderson take nothing by way of his suit. 
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.