80 S.W.3d 669 (2002)
In the Interest of K.R.P., a Child.
No. 01-01-01108-CV.
Court of Appeals of Texas, Houston (1st Dist.).
June 13, 2002.
Rehearing Overruled August 8, 2002.
*671 James R. Chapman, Spring, Randall B. White, Looper, Reed & McGraw, Houston, for Appellant.
Richard Lee Daniels, Bellaire, John Van Ness, Piro & Lilly, L.L.P., Houston, for Appellee.
Panel consists of Justices JENNINGS, RADACK, and DUGGAN.[*]

OPINION
TERRY JENNINGS, Justice.
This is an appeal from the trial court's order concerning the conservatorship of a minor child, K.R.P. Following a bench trial, the trial court appointed Keridi Cameron (petitioner below) sole managing conservator of the child. The trial court appointed the child's biological parents, Kelly Pullin (father) and Cindy Long (mother) (respondents below), possessory conservators of the child, and they appeal the trial court's order.
The parents present three issues, contending: (1) the trial court abused its discretion in appointing Cameron sole managing conservator because there was no evidence to support a finding that Long was either "unfit" or would "significantly impair the child's physical health or emotional development"; (2) the trial court's *672 conclusions that both Long and Pullin were "unfit" or would "significantly impair the child's physical health or emotional development" were against the great weight and preponderance of the evidence; and (3) the trial court erred in applying a standard of parental "fitness" rather than determining whether the appointment of either or both parents would "significantly impair the child's physical health or emotional development."
We affirm.

Facts and Procedural Background
On July 22, 1993, K.R.P. was born to Pullin and Long, who were never married to each other. At the time of the child's birth, Pullin and Long lived with Pullin's grandmother, Octavia Seitzler. During the first year of the child's life, Pullin and Long moved into their own apartment, but then returned to live with Seitzler. In February 1996, Pullin and Long separated, and Pullin and the child moved into a house with Cameron.
In September 1996, Pullin began serving a four-year criminal sentence in prison after pleading guilty to felony theft of a boat worth more than $20,000, but less than $100,000, and pleading true to an enhancement paragraph alleging a prior felony conviction for unauthorized use of a motor vehicle. At the time Pullin began his sentence, the child was residing with Cameron, although Seitzler provided help in caring for and transporting the child during part of the week. On December 31, 1997, Pullin and Cameron were married by proxy while Pullin was still incarcerated.
On December 20, 1999, Pullin was released from prison and resumed living with Cameron and the child. Less than one month later, on or about January 14, 2000, Pullin and Cameron separated, and Pullin temporarily took the child with him to live with Seitzler. On March 12, 2000, Pullin returned the child to live with Cameron full time. Pullin and Cameron did not resume cohabitation. The child has continued to lived there without interruption.
On April 7, 2000, Cameron, pursuant to section 102.003(9) of the Texas Family Code, filed suit to obtain temporary managing conservatorship of the child.[1] At a hearing before the trial court to determine temporary conservatorship of the child, Long, the biological mother, testified that it would be in the best interest of the child to live with Cameron. Following the hearing, the trial court appointed Cameron and Long joint temporary managing conservators of the child, and gave Cameron the right to determine the child's primary residence. Pullin was appointed temporary possessory conservator of the child and was given periods of visitation.
The case proceeded to a five-day bench trial beginning January 17, 2001. Before trial, and in response to Cameron's petition, Pullin filed a motion seeking custody of the child[2] and Long filed a general denial. Both sought to defeat Cameron's request for permanent managing conservatorship. On August 2, 2001, the trial court signed its final order appointing Cameron the sole managing conservator and Pullin and Long parent possessory conservators of the child.[3] The trial court awarded *673 periods of possession to Pullin and Long and ordered them both to pay child support to Cameron for the child. The trial court also signed findings of fact and conclusions of law.[4] Among its findings of fact, the trial court found, in part, as follows:
5. [Cameron], at the time of the filing of this suit, was a person, other than a foster parent, who had actual care, control and possession of [the child] for at least six months ending not more than 90 days preceding the date of the filing of the petition.
6. It is in the best interest of [the child] that [Cameron] be appointed the sole managing conservator....
7. It is in the best interest of [the child] that [Long] be appointed a possessory conservator....
8. It is in the best interest of [the child] that [Pullin] be appointed a possessory conservator....
....
11. The Court further finds based on the testimony and evidence presented that [Long] and [Pullin] are unfit parents of the child, [], and it is in the best interest of the child, [], that [Cameron] be appointed sole managing conservator of the child, [].
Among its conclusions of law, the trial court also determined "[Long] and [Pullin] are unfit parents for [the child]." Pullin and Long subsequently filed notices of appeal.

Standard of Review
In an appeal of a judgment rendered after a trial to the court, the court's findings of fact have the same weight as a jury's verdict. Amador v. Berrospe, 961 S.W.2d 205, 207 (Tex.App.-Houston [1st Dist.] 1996, writ denied). If findings of fact are not challenged, they are binding on the parties and on this Court. Cushnie v. State Bar of Texas, 845 S.W.2d 358, 360 (Tex.App.-Houston [1st Dist.] 1992, writ denied). When challenged, findings of fact are not conclusive if, as in the present case, there is a complete reporter's record. Amador, 961 S.W.2d at 207. When there is a reporter's record, the trial court's findings of fact are binding only if supported by the evidence. Id. If the findings are challenged, the court of appeals will review the sufficiency of the evidence supporting the findings. State Bar of Texas v. Roberts, 723 S.W.2d 233, 235 (Tex.App.-Houston [1st Dist.] 1986, no writ). In reviewing a no-evidence point, we consider only the evidence and inferences that tend to support the finding, disregarding all evidence and inferences to the contrary. Vannerson v. Vannerson, 857 S.W.2d 659, 666 (Tex.App.-Houston [1st Dist.] 1993, writ denied). If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the point. Id. An omitted unrequested finding, supported by the evidence, may be supplied by a presumption that it supports the judgment. Tex.R. Civ. P. 299; Black v. Dallas County Child Welfare Unit, 835 S.W.2d 626, 630 n. 10 (Tex.1992). In custody cases, factual sufficiency is not a separate ground of error on appeal; however, we may review the sufficiency of the evidence supporting a trial court's findings to determine if the court abused its discretion in making such findings. In re R.D.Y., 51 S.W.3d 314, 317 (Tex.App.-Houston [1st Dist.] 2001, no pet.). We *674 apply these standards in reviewing the sufficiency of the evidence to support the trial court's findings of fact in this case.
A trial court's conclusions of law are not binding on this Court and will be reviewed de novo. Connelly v. Paul, 731 S.W.2d 657, 661 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.).

The Parental Presumption
The presumption that the best interest of the child is served by awarding custody to a natural parent is deeply embedded in Texas law. In re V.L.K., 24 S.W.3d 338, 341 (Tex.2000); see Lewelling v. Lewelling, 796 S.W.2d 164, 166 (Tex. 1990); Legate v. Legate, 87 Tex. 248, 28 S.W. 281, 282 (1894). This parental presumption is based upon the natural affection usually flowing between parent and child. V.L.K., 24 S.W.3d at 341. The Legislature has codified this presumption in Chapter 153 of the Family Code, which governs original custody determinations:
[U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.
Tex. Fam.Code Ann. § 153.131(a) (Vernon Supp.2002). Under Chapter 153, a nonparent can rebut the parental presumption by showing that the appointment of the parent would significantly impair the child's health or development. V.L.K., 24 S.W.3d at 341; see Brook v. Brook, 881 S.W.2d 297, 298 (Tex.1994).
In determining issues of conservatorship, "[t]he best interest of the child shall always be the primary consideration" of the trial court. Tex. Fam.Code Ann. § 153.002 (Vernon 1996); V.L.K., 24 S.W.3d at 342. Trial courts have wide discretion with respect to custody, control, possession, support, and visitation matters. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982); Dennis v. Smith, 962 S.W.2d 67, 68 (Tex.App.-Houston [1st Dist.] 1997, writ denied). We will reverse only if the trial court abused its discretion by acting without reference to any guiding rules or principles or by acting arbitrarily or unreasonably. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred. Downer, 701 S.W.2d at 242; In re De La Pena, 999 S.W.2d 521, 526 (Tex.App.-El Paso 1999, no pet.); In re A.D.H., 979 S.W.2d 445, 446-47 (Tex.App.-Beaumont 1998, no writ). Consequently, an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence. De La Pena, 999 S.W.2d at 526; A.D.H., 979 S.W.2d at 447; Valdez v. Valdez, 930 S.W.2d 725, 731 (Tex.App.-Houston [1st Dist.] 1996, no writ). There is generally no abuse of discretion if some evidence supports the decision. Dennis, 962 S.W.2d at 68.
In custody matters, we must give deference to the trial court, because it faces the parties and witnesses. R.D.Y., 51 S.W.3d at 320. "[T]he trial court is in the best position to observe the demeanor and personalities of the witnesses and can `feel' the forces, powers, and influences that cannot be discerned by merely reading the record." De La Pena, 999 S.W.2d at 526 (quoting A.D.H., 979 S.W.2d at 447). As observed by the court in De La Pena: *675 Custody disputes by their very nature are inherently fact-intensive.... Appellate courts routinely defer to the fact finder at trial concerning matters of credibility and demeanor, but perhaps in no other type of litigation is it more critical.... The individuals vying for conservatorship may be scrutinized by the fact finder for such intangible signs as an animated smile when describing a child's achievements, a furrowed brow when explaining typical affectionate concern, or even tears when anticipating the emotional impact the outcome of litigation will have on a child.
Id. at 529.

Sufficiency of the Evidence that Pullin and Long are "Unfit"
In the first issue presented, Long argues there was no evidence to support the trial court's finding that she was an "unfit" parent of the child.[5]
With regard to the arguments presented by Long, we first note that, in response to Cameron's motion for custody of the child, Long filed only a general denial. Long sought no affirmative relief from the trial court, nor did she seek custody of the child herself; rather, she sought only to defeat Cameron's claim for custody. Thus, Cameron was not required to rebut the parental presumption with respect to Long. The trial court's findings of fact and conclusions of law regarding Long's parental "fitness" were, therefore, immaterial, as Long was not seeking conservatorship of the child.
Further, on appeal, Long does not challenge the trial court's finding of fact that it was "in the best interest of [the child] that [Cameron] be appointed the sole managing conservator." An unchallenged finding, when supported by the evidence, is binding on an appellate court. Cushnie, 845 S.W.2d at 360. At trial, neither Long nor Pullin offered any evidence that Cameron was unfit to care for and raise the child, as she had done either alone or with limited help for the majority of the child's life since September 1996. In fact, at the trial court's temporary orders hearing, Long testified in favor of the decision to award temporary managing conservatorship to Cameron and voiced the opinion that the best place for the child to reside at that time was with Cameron. We note that, "when a nonparent and a parent are both seeking managing conservatorship, `close calls' go to the parent." In re M.W., 959 S.W.2d 661, 665-66 (Tex. App.-Tyler 1997, no pet.) (emphasis added). Here, Long did not seek conservatorship of the child.
We overrule appellants' first issue.
In the second issue presented, Long and Pullin argue the trial court's conclusion that they were "unfit" parents of the child was against the great weight and preponderance of the evidence. For the reasons stated above, we overrule the appellants' second issue as it pertains to Long.
With respect to Pullin, Cameron was required to rebut the parental presumption in Pullin's favor because Pullin filed a motion seeking custody of his child.[6] As *676 noted above, the parental presumption may be rebutted when the evidence presented to the trial court establishes that the appointment of a natural parent "would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." Tex. Fam. Code Ann. § 153.131(a); V.L.K., 24 S.W.3d at 341. We must, therefore, review the evidence presented at trial to determine whether Cameron met her burden to show that Pullin's appointment as managing conservator would significantly impair the child's health or emotional development.
The evidence established that, prior to the child's birth, Pullin was convicted of criminal trespass, unauthorized use of a motor vehicle, unlawfully carrying a weapon, criminal trespass (again), and theft. In 1995, approximately two years after the child was born, Pullin was convicted of assaulting Long, the child's mother. In 1996, Pullin began serving a prison term for a felony theft conviction and was not released until December 1999.
Cameron and Long both testified that Pullin had abused alcohol in the past. Long testified that, during the time she lived with Pullin, she was forced to call the police at least six different times because of Pullin's violent, assaultive behavior. Cameron also testified Pullin was physically and emotionally abusive toward her and that, on one occasion, in the child's presence, Pullin slammed Cameron into the wall and hit her in the face with a telephone. This episode occurred shortly after Pullin's release from prison in 1999. Pullin offered no evidence to rebut any of these allegations of abusive behavior. In determining whether to appoint a party as a sole or joint managing conservator, the trial court "shall consider evidence of the intentional use of abusive physical force by a party against the party's spouse ... committed within a two-year period preceding the filing of the suit...." Tex. Fam. Code Ann. § 153.004 (Vernon Supp.2002).
Cameron also testified that, despite the fact that the child has been diagnosed with asthma and/or allergies, Pullin smokes in his house during his periods of possession of the child. Pullin denied smoking, but his current wife, Joanna, admitted she and Pullin had smoked in the house in the child's presence. Cameron further testified Pullin has shown little or no interest in the child's school performance and extra-curricular activities and has never attended even one parent-teacher conference concerning the child. Further, after taking the child with him to live with his grandmother in January 2000, Pullin returned the child to live with Cameron less than two months later.
Pullin has fathered one other child outside of marriage and, at the time of trial, was more than $10,000 behind in his child support payments for that other child. However, Pullin testified he was currently making larger-than-required support payments in an effort to fulfill his obligations to that child. Pullin also testified that he was currently employed as a wrecker driver and was earning approximately $2,000 every two weeks, before taxes. He further testified he was financially capable of caring for the child, that the child would be able to stay in her own bedroom in his current residence, and she would be provided with health insurance coverage through his wife's employer. There was no evidence Pullin had ever physically abused the child.
A trial court may interview a child under 12 years of age in camera to determine the child's wishes as to conservatorship, as the trial court did in this case. Tex. Fam.Code Ann. § 153.009 (Vernon Supp.2002). Pullin relies on the trial court's in camera interview of the child, in which she indicated *677 her desire to live with her natural father, as evidence that the trial court abused its discretion in awarding managing conservatorship to a nonparent. Although such interview statements may be informative to a trial court in making its custody decision, they in no way diminish the discretion of the trial court. Id.
Specific acts or omissions of a parent implicating a significant impairment to a child's health or emotional development may be inferred from direct evidence. De La Pena, 999 S.W.2d at 529. While we acknowledge that the relevant inquiry is a parent's present fitness, we recognize that an adult's future conduct may be determined by recent past conduct. Id.; M.W., 959 S.W.2d at 666. The evidence established that, since September 1996, Cameron had been the primary or sole care-giver for the child. Pullin has relied on Cameron to care for and raise the child, either exclusively or with limited assistance from Pullin's grandmother up until the time of trial. It would not seem unreasonable for the trial court to have concluded that a separation of the child from the only person who has consistently cared for her for the majority of her life would "significantly impair" the child's emotional development. This fact, the evidence of Pullin's past abusive and criminal behavior, and Long's testimony at the temporary orders hearing that Cameron, not Pullin or Long, was the appropriate person to care for the child, were undoubtedly significant factors in the trial court's decision to award sole managing conservatorship to Cameron.
Based on the record, we conclude the trial court did not abuse its discretion in making its finding of fact and conclusion of law that Pullin was an "unfit" parent of the child, i.e., Pullin's appointment as managing conservator of the child would "significantly impair the child's physical health and emotional development." That finding was supported by the evidence.
Accordingly, we overrule appellants' second issue as it pertains to Pullin.

Standard of "Fitness" v. "Significant Impairment"
In the third issue presented, Long and Pullin contend the trial court incorrectly applied a standard of parental "fitness" rather than the statutory standard of "significant impairment" in making its findings of fact and conclusions of law.
As noted above, Long sought no affirmative relief from the trial court; thus, any findings as to her were irrelevant. Because we further conclude the evidence supports a finding that the appointment of Pullin as managing conservator would "significantly impair the child's physical health and emotional development," we overrule appellants' third issue as moot.

Conclusion
We affirm the judgment of the trial court.
NOTES
[*] The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.
[1] At the same time, in a separate cause, Cameron sought and was granted an agreed divorce from Pullin, which became final on December 4, 2000.
[2] Pullin's motion does not appear in the clerk's record, although the record does contain Cameron's response to it.
[3] Based on an agreement between the parties, the trial court also found Pullin to be the natural father of the child.
[4] The trial court signed two sets of findings of fact and conclusions of law, one on September 9 and the other on September 18, 2001. The two sets of findings and conclusions are almost identical, but only the September 18, 2001 set contains a finding of fact and a conclusion of law concerning the "fitness" of Pullin and Long as parents of the child.
[5] The appellants do not challenge, and we shall not address, the trial court's determination as to their periods of visitation, monthly child support payments, or other court-ordered obligations.
[6] Contrary to Pullin's assertion that he tried the case solely on a general denial, the record before us contains Cameron's response to Pullin's motion for custody. No copy of Pullin's motion appears in the record. However, in an abundance of caution, we presume Pullin sought custody of the child in the trial court.