Opinion issued April 10, 2008 






 













In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00701-CV

__________


PETE SNODGRASS, Appellant


V.


CEDYCO CORPORATION, Appellee






On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 2006-11101






MEMORANDUM OPINION

 Appellant, Pete Snodgrass, challenges the trial court's take-nothing judgment
rendered after a bench trial in favor of appellee, Cedyco Corporation ("Cedyco"), in
his suit against Cedyco for fraud and violations of the federal Fair Debt Collection
Practices Act (FDCPA). (1) In three issues, appellant contends that the trial court
erroneously concluded that the sale of his real property "was noticed pursuant to a
valid order," the trial court erroneously concluded that he "bargained for and received
all of [Cedyco's] right, title, and interest in and to the underlying judgment," and "the
trial court should have made conclusions regarding [Cedyco's] fraud and unfair debt
collection practices as a matter of law."

 We affirm. 

Factual and Procedural Background


 In his original petition, appellant alleged that on September 22, 1986,
Sakowitz, Inc. obtained a judgment for $12,818.75 plus interest against his brother,
Michael Snodgrass, for an unpaid consumer debt. On November 18, 1986, Sakowitz
filed an abstract of judgment against real property owned by Michael, but it "did not
file for execution on this judgment at any time." Subsequently, on September 5,
1991, Michael deeded the property to his father, AC Snodgrass, who, on November
22, 1993, deeded the property to appellant. On August 19, 1996, Cedyco received by
assignment rights to the judgment against Michael and, on March 31, 1997, it filed
an abstract of judgment against Michael based on the 1986 judgment. On January 5,
2004, Cedyco "moved the [county] court to order . . . the sale of the property," which
it did on February 2, 2004. Appellant learned on February 22, 2004, that the
property, which was his home, was scheduled for sale, and, on February 28, 2004,
Michael filed a verified emergency motion for new trial to set aside the order of sale. 
On March 2, 2004, although appellant paid $14,000 to Cedyco, "Cedyco had actual
and constructive notice that it did not have any right to execute the judgment against
[appellant's] home." 

 In support of his claims, appellant alleged that Cedyco "fraudulently
misrepresented and concealed material facts," "misrepresented the state of the title
of the real property and improvements," and "threatened to take legal action that it did
not have a legal right to take."

 Cedyco filed an original answer and counterclaim, in which it asserted that, on
March 1, 2004, it entered into an agreement with appellant to assign him the
judgment against Michael and set aside the order authorizing the sale of the property. 
Cedyco attached to its answer the assignment of judgment, which stated that Cedyco,
in consideration for appellant's payment of $14,000, sold and assigned him the
judgment against Michael. (2) The assignment of judgment further provided,

 Assignor [Cedyco] represents that it is the present one hundred
percent (100%) legal and equitable owner and holder of the Assigned
Judgment and the liens securing it, if any, that Assignor will not collect
any further money in satisfaction of the Assigned Judgment or any part
thereof, and that Assignor will not release or discharge the Assigned
Judgment. Except for the representations and warranties made in the
immediately preceding sentence, this Assignment is made without
recourse of any kind or character to Assignor for any purpose or to any
extent whatsoever, is made without representation or warranty of any
kind or character, including but not limited to any representation or
warranty regarding the validity of the Assigned Judgment or any liens
securing it. Assignor does not guarantee in any way payment or
collection of the Assigned Judgment, and in the event of nonpayment of
the Assigned Judgment, there will be no recourse against the assignor.


(Emphasis added). 

 At the bench trial, appellant testified that he had lived in the property since
1993 after he bought it from his father, and he introduced the deed to the property
into evidence. Appellant explained that, on February 22, 2004, he learned that his
home was scheduled for foreclosure in approximately eight days to satisfy a judgment
against his brother, although the judgment had not been entered against him
personally and his brother did not have any ownership interest in the property. 
Appellant met with an attorney "to strategize about how [he] could possibly keep
[his] home from being taken," and he was "terrified, angry, and scared" because he
did not know what was happening, was spending money "hand over fist on attorney's
fees," and thought the dispute would go on forever. Based on his conversations with
his attorney, appellant believed that there was a possibility that the judgment against
his home was valid. Thus, appellant stated that he "cooperated with [his] attorney . . .
to try to keep [his] house from being taken," and, on March 1, 2004, the parties
entered into an "agreement to not sell [his] house at foreclosure." Appellant denied
that he was "ever interested in bargaining for the right to the judgment against his
brother" or that it was ever his intention to purchase the judgment against his brother. 
 During cross-examination, Cedyco introduced into evidence the "Execution
and Order of Sale" signed by the county court on February 2, 2004 in underlying
proceedings and the "Verified Emergency Motion for New Trial, Request for
Abatement of or to Set Aside Execution and Order of Sale," which was filed in the
county court by Michael on February 22, 2004. In its order of sale, the county court
recited that the 1986 judgment was a valid final judgment, Michael owned the
property, the abstract of judgment created a lien on the property, and Cedyco was
entitled to the order. In his verified emergency motion, Michael stated that the
property was owned by appellant, the 1986 judgment was dormant and invalid, the
abstract on the property had expired, and Cedyco's lien had ceased to exist. The
motion was verified both by Michael and Timothy Ploch, who was appellant's
attorney. (3) 

 Appellant further testified that he attended a hearing on the day before his
home was to be sold and that "there was a negotiation in the hallway" prior to the
hearing. Appellant explained that he "basically left it in [his] attorney's hands," 
denied that he had talked to his attorney about buying the judgment against his
brother, and stated that he did not think that he had purchased the judgment. 
However, when asked who came up with the idea of "paying [the] judgment,"
appellant testified that "it was mainly between [his] attorney's advice" and that both
he and his attorney had discussed it. When appellant was presented with a copy of
the assignment of judgment, he acknowledged it and conceded that his attorney had
drafted it. He further agreed that it may have been "briefly discussed" that he might
be able to execute the judgment against his brother, but then stated that he would not
do that because the judgment was invalid, dormant, and unenforceable. Appellant
further stated that he "never intend[ed] to collect on" the judgment, he had not
recorded the assignment of judgment in the county records, and he had drawn up a
release of the assigned judgment in favor of his brother and had filed the release in
the county records. 

 Appellant acknowledged that, on March 1, 2004, the county court in the
underlying case had entered an agreed order granting Michael's verified emergency
motion for new trial and vacating the order of sale. Appellant agreed that he
authorized his attorney to enter into this agreed order and that he was with his
attorney in the county court on the date that the parties entered into the agreed order. 
He also explained that the parties entered into this agreed order after they "agreed to
a price."

 Following the bench trial, the trial court entered a final judgment in favor of
Cedyco and ordered that appellant take nothing. The trial court subsequently entered
findings of fact and conclusions of law. The trial court found that on November 22,
1993, AC deeded the property to appellant; on August 19, 1996, Cedyco received by
assignment the rights to the judgment against Michael; on November 18, 1996, the
abstract against Michael based on the 1986 judgment expired; on March 31, 1997,
Cedyco filed an abstract of judgment against Michael based on the 1986 judgment;
on January 5, 2004, Cedyco moved the county court to order the sale of the property;
on February 2, 2004, the county court ordered the sale of the property; on February
22, 2004, appellant learned that the property was scheduled for sale; on February 28,
2004, Michael filed a verified emergency motion to set aside the order of sale; a
hearing on the emergency motion was ordered to be held on March 1, 2004; appellant
agreed to pay Cedyco $14,000 to obtain Cedyco's rights in the judgment against
Michael; and, on March 2, 2004, appellant paid Cedyco $14,000. In its conclusions
of law, the trial court stated that the sale of the property was noticed pursuant to a
valid order and that appellant had bargained for and received all of Cedyco's right,
title, and interest in the underlying judgment.

Standard of Review

 In an appeal of a judgment rendered after a bench trial, the trial court's findings
of fact have the same weight as a jury's verdict, and we review the legal and factual
sufficiency of the evidence used to support them, just as we would review a jury's
findings. (4) Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Daniel v. Falcon
Interest Realty Corp., 190 S.W.3d 177, 184 (Tex. App.--Houston [1st Dist.] 2005,
no pet.). When challenged, a trial court's findings of fact are not conclusive if, as in
the present case, there is a complete reporter's record. In re K.R.P., 80 S.W.3d 669,
673 (Tex. App.--Houston [1st Dist.] 2002, pet. denied). 

 In conducting a legal sufficiency review of the evidence, a court must consider
all of the evidence in the light most favorable to the verdict and indulge every
reasonable inference that would support it. City of Keller v. Wilson, 168 S.W.3d 802,
822 (Tex. 2005). If a party attacks the legal sufficiency of an adverse finding on an
issue as to which it bears the burden of proof, then it must demonstrate on appeal that
the evidence conclusively established, as a matter of law, all vital facts in support of
the issue. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). In
determining whether legally sufficient evidence supports the finding under review,
we must consider evidence favorable to the finding if a reasonable fact finder could
consider it, and disregard evidence contrary to the finding unless a reasonable fact
finder could not disregard it. City of Keller, 168 S.W.3d at 827; Brown v. Brown, 236
S.W.3d 343, 348 (Tex. App.--Houston [1st Dist.] 2007, no pet.). When a party
attacks the factual sufficiency of an adverse finding on an issue on which it has the
burden of proof, it must demonstrate on appeal that the adverse finding is against the
great weight and preponderance of the evidence. Dow Chem. Co. v. Francis, 46
S.W.3d 237, 242 (Tex. 2001). In reviewing a claim that a finding is against the great
weight and preponderance of the evidence, we consider and weigh all of the evidence
and may set aside the verdict only if the finding is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986). 

 In an appeal from a bench trial, we review a trial court's conclusions of law
de novo, and we will uphold the conclusions if the judgment can be sustained on any
legal theory supported by the evidence. BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002); In re Moers, 104 S.W.3d 609, 611 (Tex.
App.--Houston [1st Dist.] 2003, no pet.). Although a trial court's conclusions of law
may not be challenged for factual sufficiency, we may review the legal conclusions
drawn from the facts to determine whether the conclusions are correct. BMC
Software Belgium, N.V., 83 S.W.3d at 794. If we determine that a conclusion of law
is erroneous, but that the trial court nevertheless rendered the proper judgment, the
error does not require reversal. Id.; Vaughn v. DAP Fin. Servs., 982 S.W.2d 1, 6
(Tex. App.--Houston [1st Dist.] 1997, no pet.).

 We note that the trial court acts as fact finder in a bench trial and is the sole
judge of the credibility of witnesses. See Murff v. Murff, 615 S.W.2d 696, 700 (Tex.
1981); HTS Servs., Inc. v. Hallwood Realty Partners, L.P., 190 S.W.3d 108, 111
(Tex. App.--Houston [1st Dist.] 2005, no pet.). 

Review of Legal Conclusions

 In his second and third issues, appellant argues that "the trial court's legal
conclusion that [he] bargained for and received all of [Cedyco's] right, title, and
interest in and to the underlying judgment was reversible error because the factual
findings fail to provide any support for this legal conclusion" and "the trial court
should have made conclusions regarding [Cedyco's] fraud and unfair debt collection
practices as a matter of law because the findings of fact demonstrate that the
underlying judgment was dormant and [Cedyco] misrepresented the validity of the
judgment in order to improperly claim rights to [Snodgrass's] property." 

 Within his first issue, appellant complains that "he was persuaded in the
hallway before the hearing to pay [Cedyco] for its purported rights in the judgment"
and that the county court "was never afforded the opportunity to review" his
emergency motion or the county court's order of sale. Within his second issue
appellant further complains that it was "very likely that the execution order would
have been found invalid" by the county court. 

 Here, appellant's testimony was equivocal, contradictory, and in direct conflict
with the terms of the assignment of judgment. Appellant initially testified that he
never intended to purchase the judgment against his brother, he had never discussed
this possibility with his attorney, and he had, in fact, never purchased the judgment. 
However, he subsequently testified that he recognized the assignment of judgment,
and he conceded that the assignment had been prepared by his own attorney. 
Appellant further conceded that, although he "basically left" the settlement
negotiations in his "attorney's hands," he had in fact discussed the option of buying
the judgment with his attorney. 

 Appellant did not dispute that he authorized his attorney to prepare the
assignment. He also did not assert that he had failed to understand the plain terms of
the assignment, which expressly provided that the assignment was being made
"without recourse of any kind or character" and "without representation or warranty
of any kind or character, including but not limited to any representation or warranty
regarding the validity of the Assigned Judgment or any liens securing it." 

 In regard to the validity of the 1986 judgment and order of sale, appellant
testified that, based upon his conversations with his own attorney, he believed that
there was a possibility that the judgment was valid, he and his attorney "strategize[d]
as to how to keep his home," and he "cooperated with [his] attorney." Thus, one of
the theories that appellant presented to the trial court was that, although he was
represented by counsel in the county court proceedings, he had not discovered the
purported fraud at the time that he had entered into the assignment. However,
appellant also agreed that, prior to electing to enter into the assignment, his attorney
had filed the verified emergency motion in the county court proceedings, which
established that appellant owned the property and that it was not subject to
foreclosure. Within this emergency motion, filed by Michael and on behalf of
appellant, appellant had also challenged the validity of the judgment and order of sale
for many of the same reasons that he raised in bringing the instant suit against
Cedyco. Yet, the evidence established that after the filing this emergency motion, in
which appellant's attorney raised the issues that appellant again attempted to raise in
the instant case in support of his fraud and debt collection claims, appellant
nevertheless entered into the assignment. This evidence undercuts appellant's
contention that he was unaware of questions regarding the validity of any alleged lien
on the property when he entered into the assignment.

 In regard to the agreed order, appellant conceded that he was with his attorney
in the county court on the date that the county court entered it. It is undisputed that,
by setting aside the sale, the county court's order provided appellant with the relief
requested in those proceedings. Thus, appellant's argument that the county court
never had the opportunity to consider the arguments raised in the emergency motion
ignores the fact that the county court actually heard and granted the agreed motion. 
Although appellant testified that the parties entered into this agreed order only after
they had "agreed to a price," no other evidence indicates that the county court entered
its agreed order and granted the requested relief contingent only upon the parties'
entry into the assignment of judgment. (5) 

 In sum, appellant's testimony was contradictory on whether he intended to
purchase the judgment, and his testimony that he did not intend to purchase the
judgment was countered by the plain terms of the assignment, which, as appellant
conceded, was prepared by his own attorney. Based on these contradictions, the trial
court was entitled to give little, if any, weight to appellant's testimony that Cedyco
made misrepresentations on which he relied in entering into the assignment. The trial
court, in its role as fact-finder, could have rejected appellant's claims that, once
Cedyco discovered Michael no longer owned the property, Cedyco continued to make
demands or threats against appellant. Based on appellant's testimony, the trial court
could have reasonably concluded, regardless of the validity of the judgment, that
appellant entered into the assignment to avoid continuing to pay attorney's fees
necessary to investigate the status of the 1986 judgment, to avoid uncertainty in
litigation, to prevent the dispute from going on "forever," or to insulate his brother
from any further litigation regarding the judgment, as evidenced by appellant's
preparation and filing of a release in favor of Michael in the county court records. 
Additionally, the trial court could have reasonably concluded that, to whatever extent
Cedyco held any right, title, and interest in the judgment, appellant bargained for and
received any such right, title, and interest by entering into the assignment. Accordingly, we hold that appellant did not establish, as a matter of law, that
Cedyco committed fraud or violated the FDCPA and that the trial court did not err in
not making any such conclusions. We further hold that the trial court did not err in
not making additional findings of fact in support of appellant's claims. 

 We overrule appellant's second and third issues.

 Conclusion


 Having held that the trial court did not err in concluding that Cedyco did not
commit fraud or violate the FDCPA and that the trial court did not err in not making
any additional findings of fact in support of appellant's claims, we need not address
appellant's first issue regarding the trial court's conclusion concerning the validity
of the county court's order of sale as the conclusion is not essential to the judgment. 
 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.
1. See 15 U.S.C. § 1692 (2005).
2. The assignment of judgment stated that the assigned judgment was entered in an
underlying cause styled Sakowitz, Inc. v. Michael Snodgrass, No. 476,361, in the
County Civil Court at Law No. 1 of Harris County, Texas.
3. Although the emergency motion was filed and verified by Michael, appellant testified
that Timothy Ploch, the attorney who filed the motion on behalf of Michael, was his
attorney and that the emergency motion was also filed on appellant's behalf.
Appellant further testified that Ploch was representing him in the county court
proceedings. 
4. Although, in his issues on appeal, appellant specifically challenges certain
conclusions of law, he also refers to legal and factual sufficiency challenges. 
5. The agreed order was signed on March 1, 2004; the assignment was signed on March
3, 2004.