Opinion issued April 28, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00619-CV

———————————

Brent Thomas
McPherson, Appellant

V.

Ruth Hollyer, Appellee



 



 

On
Appeal from the 245th District Court

Harris
County, Texas



Trial Court Case No. 2008-20953

 



 

MEMORANDUM OPINION

This is an appeal from the trial court’s
order concerning the conservatorship of a minor child, C.M.  Following a hearing before the trial court,
the trial court appointed C.M.’s maternal grandmother, Ruth Hollyer, sole
managing conservator of the child.  The
trial court appointed the child’s biological parents, Brent T. McPherson and
Caroline Hollyer, possessory conservators of the child.  McPherson appeals the trial court’s
order.  In three points of error,
McPherson argues: (1) the trial court erred in rejecting the mediated
settlement agreement between him and Ruth Hollyer; (2) there is no evidence in
the record to rebut the statutory presumption that it was in C.M.’s best
interest to appoint him as managing conservator of C.M.; and (3) there is no
evidence in the record supporting the trial court’s decision to restrict his
possessory rights.

We affirm.

                                                                                                                                                                
Background

In April 2008, Ruth Hollyer filed a petition requesting
that she be appointed the sole managing conservator of C.M.  McPherson filed a counter-petition requesting
that he be appointed the sole managing conservator of C.M.

McPherson and Ruth Hollyer attended mediation.  Caroline Hollyer was not present at the
mediation, nor is there any evidence that she was aware of it.  McPherson and Ruth Hollyer entered into a
mediated settlement agreement, awarding McPherson sole managing conservatorship
of C.M. and awarding Ruth Hollyer possessory conservatorship.[1]  The parties agreed that any time that the
trial court might award to Caroline Hollyer for visitation or possession would
be taken from the time allotted to Ruth Hollyer for her possession.

At the hearing to establish conservatorship, McPherson and
Ruth Hollyer asked the trial court to enter the settlement agreement as an
order.  Caroline Hollyer was at the
hearing and did not consent to the entry of the settlement agreement.  The trial court rejected the settlement
agreement, and the parties proceeded to present evidence concerning who should
be awarded conservatorship of C.M.  

There was conflicting testimony at the hearing about where
C.M. had lived over the years.  McPherson
testified that C.M. had lived with him and Caroline Hollyer for the first year
of her life.  After that year, they all
moved in with McPherson’s father. 
Shortly thereafter, Caroline Hollyer moved out.  Some time later, McPherson began attending
college in Galveston, where he obtained an apartment.  He also testified that C.M. had lived with
his mother since C.M.’s first year.  

Caroline Hollyer testified that C.M. had lived with Ruth
Hollyer all of C.M.’s life.  Ruth Hollyer
testified that C.M. had lived with her since C.M. was one year old.  All the parties agreed that C.M. had health
insurance under Ruth Hollyer’s insurance. 
Ruth testified that she was only able to put C.M. on her insurance
because C.M. lived with her.

All the parties agreed that, from August 2008 until the
hearing, C.M. resided with McPherson’s mother. 
Ruth Hollyer testified that McPherson picked up C.M. from daycare for an
agreed-upon visitation period and later refused to return C.M. to her.  McPherson denied that C.M. had ever lived
with Ruth Hollyer, so there was no reason to return C.M. to her.

Ruth Hollyer testified that the period that McPherson took
possession of C.M. and kept her at his mother’s home was traumatic for C.M. and
C.M. expressed that to Ruth Hollyer. 
C.M. also exhibited physical reactions to the trauma including a swollen
lip from continuously biting her lower lip.

McPherson also testified that he was still in school at
the time of the hearing, that he would continue to live in Galveston for at
least a couple of days out of the week, that his mother would take care of C.M.
while he was not there, and that he would reside with his mother and C.M. while
he was there.  Because he did not have a
job while he was in school, he would give his mother money when he could from
scholarships, retention funds, grants, and student loans.  He had a job from “2003 to almost 2005” and
after that did some work giving private baseball lessons and working at his
father’s baseball camps during the summer. 
He admitted that he had never given Ruth Hollyer money for C.M.’s care,
but testified that he had given his mother money.

McPherson’s mother was not a party to the suit, did not
testify, and did not seek any assignment of custody for C.M.  There was no other testimony about whether
McPherson’s mother had the means to provide for C.M. beyond what McPherson
occasionally provided her.  Additionally,
there is no evidence of McPherson’s mother’s ability to provide care for C.M.
or even that she wanted to be C.M.’s primary caretaker while McPherson was in
school.

In contrast, Ruth Hollyer testified that she had been
working for Shell Oil Company for 30 years as an engineering associate.  She was the party to first bring this action
and asked the court to assign her as the sole managing conservator.  She testified that she had provided for C.M.
since C.M. was one, including enrolling her in day care, obtaining and paying
for health insurance, and taking her to doctor’s appointments.

At the end of the hearing, the trial court appointed Ruth
Hollyer as the sole managing conservator and appointed McPherson and Caroline
Hollyer as possessory conservators.

                                                                                                                         
Mediated Settlement Agreement

In his first point of error, McPherson argues that the
trial court erred by rejecting the mediated settlement agreement entered into
by McPherson and Hollyer.

A party claiming error on appeal must present a concise
argument for the contentions made with appropriate citations to authorities and
to the record.  Tex. R. App. P. 38.1(i). 
This party bears the burden of showing the record supports the
contentions raised.  In re J.M.C.A., 31 S.W.3d 692, 699 (Tex. App.—Houston [1st Dist.]
2000, no pet.).  The mediated settlement
agreement that McPherson argues the trial court erred by rejecting is not a
part of the record.  

The Texas Rules of Appellate Procedure establishes a
limited number of documents that must be included in the clerk’s record.  Tex. R.
App. P. 34.5(a).  Anything more
must be designated by the parties.  Tex. R. App. P. 34.5(b).  Additionally, any party can seek
supplementation of the clerk’s record and, at least until the time the case is
set for submission, the supplement will be accepted.  Id.
; Worthy v. Collagen Corp., 967
S.W.2d 360, 366 (Tex. 1998) (holding that, after submission, courts have more
discretion in denying supplementation).

The parties never filed a designation of the record in
this case.  As a result, the original clerk’s
record consisted only of the items enumerated in Rule 34.5(a).  Subsequently, no party filed a request for
supplementation.  Instead, McPherson
attaches the document as an appendix to his brief.  Attachments of documents as exhibits or
appendices to briefs do not constitute a formal inclusion in the record on
appeal and cannot be considered.  Sowell v. The Kroger Co., 263 S.W.3d 36,
38 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  

Because the document central to McPherson’s argument is
not a part of our appellate record, any error in the trial court’s rejection of
it has been waived.  We overrule
appellant’s first point of error.

                                                           
Appointment of Grandmother as Sole Managing
Conservator

In his second point of error, McPherson argues that there
is no evidence in the record to rebut the statutory presumption that it was in
C.M.’s best interest to appoint him as managing conservator of C.M.

A.              
Standard of Review & Applicable Law

We review a trial court’s decision on conservatorship for
an abuse of discretion and reverse the trial court only if we determine, from
reviewing the record as a whole, that the trial court abused its
discretion.  Monroe v. Alternatives in
Motion, 234 S.W.3d 56, 64
(Tex. App.—Houston [1st Dist.] 2007, no pet.). 
A trial court abuses its discretion when it acts arbitrarily or
unreasonably, or without reference to any guiding rules or principles.  Id. at 64–65.  We view the evidence in the light most
favorable to the trial court’s decision and indulge every legal presumption in
favor of its judgment.  Holley v.
Holley, 864 S.W.2d 703, 706
(Tex. App.—Houston [1st Dist.] 1993, writ denied).  

Under an abuse of discretion standard, legal insufficiency
is not an independent reversible ground, but is a relevant factor in assessing
whether the trial court abused its discretion. 
Mai v. Mai, 853 S.W.2d 615, 618 (Tex. App.—Houston [1st Dist.]
1993, no writ).  To determine whether
there has been an abuse of discretion because the evidence is legally
insufficient to support the trial court’s decision, we consider: (1) whether
the trial court had sufficient evidence upon which to exercise its discretion
and (2) whether it erred in its application of that discretion.  In re T.D.C., 91 S.W.3d 865, 872 (Tex.
App.—Fort Worth 2002, pet. denied).

Under the first prong,
we apply the applicable sufficiency review. 
Id.  In a legal sufficiency
review, we consider all of the evidence in the light most favorable to the
verdict and indulge every reasonable inference that would support it.  City of Keller v. Wilson, 168 S.W.3d
802, 822 (Tex. 2005).  We consider
evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not disregard it.  Id. at 827; Brown
v. Brown, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no
pet.).  The factfinder is the sole judge
of the credibility of the witnesses and the weight to give their
testimony.  Wilson, 168 S.W.3d at
819.  When there is conflicting evidence,
it is the province of the factfinder to resolve such conflicts.  See id.
at 820.  The final test is “whether the
evidence at trial would enable reasonable and fair-minded people to reach the
verdict under review.”  Id. at
827.

Under the second prong,
we consider whether, based on the evidence, the trial court’s decision was
arbitrary, unreasonable, or without reference to guiding rules or
principles.  In re T.D.C., 91
S.W.3d at 872.

In determining conservatorship and possession issues, the
best interest of the child is always the primary consideration.  Tex.
Fam. Code Ann. § 153.002 (West 2008); Lenz v. Lenz, 79 S.W.3d 10, 14 (Tex. 2002).  Furthermore, “public policy of this state is
to: (1)
assure that children will have frequent and continuing contact with parents who
have shown the ability to act in the best interest of the child; (2) provide a
safe, stable, and nonviolent environment for the child; and (3) encourage
parents to share in the rights and duties of raising their child after the
parents have separated or dissolved their marriage.”  Tex.
Fam. Code Ann. § 153.001(a) (West 2008).  The burden of proof in conservatorship cases
is a preponderance of the evidence.  Id. § 105.005 (West 2008); Monroe, 234 S.W.3d at 65.

B.              
Analysis

There is a rebuttable presumption “that the appointment of
the parents of a child as joint managing conservators is in the best interest
of the child.”  Tex. Fam. Code Ann. § 153.131(b) (West 2008).   The presumption that the best interest of
the child is served by awarding custody to a natural parent is deeply embedded
in Texas law.  In re V.L.K., 24 S.W.3d 338, 341 (Tex. 2000), In re K.R.P., 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.]
2002, pet. denied).  That presumption is
rebutted, however, if the evidence at trial establishes that the appointment “would
not be in the best interest of the child because the appointment would
significantly impair the child’s physical health or emotional development.”  Tex.
Fam. Code Ann. § 153.131(a). 
This “does not necessarily require proof of a parent’s blameworthy
conduct as a prerequisite to appointment of a nonparent as managing
conservator.”  In re R.T.K., 324 S.W.3d 896, 902 (Tex. App.—Houston [14th Dist.]
2010, pet. filed).  Instead, the statute
addresses only the effect of a parent’s appointment on the child.  Id.  

There was conflicting testimony at the hearing about where
C.M. had lived over the years.  McPherson
testified that C.M. had lived with him and Caroline Hollyer for the first year
of her life.  After that year, they all
moved in with McPherson’s father. 
Shortly thereafter, Caroline Hollyer moved out.  Some time later, McPherson began attending
college in Galveston, where he obtained an apartment.  He also testified that C.M. had lived with
his mother since C.M.’s first year.  

Caroline Hollyer testified that C.M. had lived with Ruth
Hollyer all of C.M.’s life.

Ruth Hollyer testified that C.M. had lived with her since
C.M. was one year old.  All the parties
agreed that C.M. had health insurance under Ruth Hollyer’s insurance.  Ruth testified that she was only able to put
C.M. on her insurance because C.M. lived with her.

All the parties agreed that, from August 2008 until the
hearing, C.M. resided with McPherson’s mother. 
Ruth Hollyer testified that McPherson picked up C.M. from daycare for an
agreed-upon visitation period and later refused to return C.M. to her.  McPherson denied that C.M. had ever lived
with Ruth Hollyer, so there was no reason to return C.M. to her.

Ruth Hollyer testified that the period that McPherson took
possession of C.M. and kept her at his mother’s home was traumatic for C.M. and
C.M. expressed that to Ruth Hollyer. 
C.M. also exhibited physical reactions to the trauma including a swollen
lip from continuously biting her lower lip.

McPherson also testified that he was still in school at
the time of the hearing, that he would continue to live in Galveston for at
least a couple of days out of the week, that his mother would take care of C.M.
while he was not there, and that he would reside with his mother and C.M. while
he was there.  Because he did not have a
job while he was in school, he would give his mother money when he could from
scholarships, retention funds, grants, and student loans.  He had a job from “2003 to almost 2005” and
after that did some work giving private baseball lessons and working at his
father’s baseball camps during the summer. 
He admitted that he had never given Ruth Hollyer money for C.M.’s care,
but testified that he had given his mother money.

McPherson’s mother was not a party to the suit, did not
testify, and did not seek any assignment of custody for C.M.  There was no other testimony about whether
McPherson’s mother had the means to provide for C.M. beyond what McPherson
occasionally provided her.  Additionally,
there is no evidence of McPherson’s mother’s ability to provide care for C.M.
or even that she wanted to be C.M.’s primary caretaker while McPherson was in
school.

In contrast, Ruth Hollyer testified that she had been
working for Shell Oil Company for 30 years as an engineering associate.  She was the party to first bring this action
and asked the court to assign her as the sole managing conservator.  She testified that she had provided for C.M.
since C.M. was one, including enrolling her in day care, obtaining and paying
for health insurance, and taking her to doctor’s appointments.

On appeal, McPherson does not challenge any of the trial
court’s findings of fact, including:

4.       The
Court finds by clear and convincing evidence that the child, [C.M.], has lived
with Petitioner, RUTH HOLLYER, the child’s Maternal Grandmother, for the
majority of the child’s life from the time the child was one (1) year[] old
until the Summer of 2008, for a period of approximately four (4) years.

 

5.       The
Court finds by clear and convincing evidence that Petitioner[,] RUTH HOLLYER,
has supported the child financially the majority of the child’s life.  The Court finds by clear and convincing
evidence that Respondent, BRENT MCPHERSON, although he has been employed at
various times, has not supported the child, [C.M.], financially during any
period of time that the child was in possession of Petitioner, RUTH HOLLYER . . . .

 

. . .

 

11.     The
Court finds by clear and convincing evidence that the appointment of
Petitioner, RUTH HOLLYER, as sole managing conservator of the child would be in
the best interest of the child, [C.M.]; and that appointment of the parents,
CAROLINE HOLLYER and BRENT MCPHERSON, as sole managing conservator of the
child, [C.M.] would not be in the best interest of the child because the
appointment would significantly impair the child’s health or emotional development.

An unchallenged finding, when supported by the
evidence, is binding on an appellate court. 
In re K.R.P., 80 S.W.3d at
675.  

There was conflicting evidence about where C.M. had resided
from the age of one until the summer of 2008. 
When there is conflicting evidence, it is the province of the factfinder
to resolve such conflicts.  See Wilson, 168 S.W.3d at 820.  Because McPherson does not challenge the
finding that C.M. lived with Ruth Hollyer from the age of one until the summer
of 2008 and because nothing in the record suggests the trial court could not
have resolved the conflicting testimony this way, we are bound by this
finding.  See In re K.R.P., 80 S.W.3d at 675.

McPherson admitted that he had worked at least
periodically over the years and that he had never given Ruth Hollyer money for
C.M.’s care.  There is evidence in the
record, then, to support the trial court’s finding that “although he has been
employed at various times, [he] has not supported the child, [C.M.],
financially during any period of time that the child was in possession of
Petitioner, RUTH HOLLYER.”  Accordingly,
this finding is also binding.

There is no evidence to suggest that Ruth Hollyer is unfit
to care for and raise C.M., as she had done from the time C.M. was one.  Additionally, Caroline Hollyer has not sought
sole or joint managing conservatorship of C.M. 
We are left to determine, then, whether there is sufficient evidence in
the record to support the finding that appointing McPherson the sole managing
conservator of C.M. would significantly impair C.M.’s health or emotional
development.

In In re K.R.P.,
we held that it is not unreasonable for a trial court to conclude “that a
separation of the child from the only person who was consistently cared for her
for the majority of her life would ‘significantly impair’ the child’s emotional
development.”  Id. at 677.  Similarly, the
Fourteenth Court of Appeals held in In re
R.T.K. that the trial court could have reasonably concluded “that removal
of R.T.K. from ‘the only home he has known’ would significantly impair his
emotional development.”  324 S.W.3d at
905.

Additionally, while not determinative, failure of a parent
to financially support a child is a factor to be considered by the trial court
in awarding custody.  Clements v. Schaeffer, 360 S.W.2d 906,
908 (Tex. Civ. App.—San Antonio 1962, no writ); see also Thomas v. Thomas, 852 S.W.2d 31, 36 (Tex. App.—Waco 1993,
no writ) (considering father’s failure to provide financial support for child
for three year period in affirming award of sole managing conservatorship to
maternal grandmother).

Viewing the evidence in the light most favorable to the
trial court’s ruling, the evidence established that C.M. lived with Ruth
Hollyer from the age of one until the age of five.  C.M. exhibited emotional and physical trauma
when she was taken away from Ruth Hollyer by McPherson to live at McPherson’s
mother’s home.  McPherson did not provide
any child support to Ruth Hollyer during this time, even though he was employed
at least occasionally during this time. 
Instead, Ruth Hollyer provided for C.M., including enrolling her in day
care, obtaining and paying for health insurance, and taking her to doctor’s
appointments.

Additionally, the evidence at the hearing established
that, while C.M. was purportedly in McPherson’s care from August 2008 until the
time of the hearing, C.M. was in fact being cared for primarily by McPherson’s
mother.  McPherson lived in Galveston for
at least two days out of each week.  His
mother would take care of C.M. while he was not there, and he would reside with
his mother and C.M. while he was there. 
There is no evidence regarding McPherson’s mother’s ability or
willingness to care for C.M. in McPherson’s stead.  McPherson was able to provide support for
C.M. only periodically, using what money remained from scholarships, retention
funds, grants, and student loans.

We hold that the trial court did not abuse its discretion
in finding that appointing McPherson as sole managing conservator of C.M. would
not be in her best interest because the appointment would significantly impair
her health or emotional development.  See Tex.
Fam. Code Ann. § 153.131.

We overrule appellant’s second point of error.

                                                                                                                          
McPherson’s Possessory Rights

In his third point of error, appellant argues that there
is no evidence in the record supporting the trial court’s decision to restrict
his possessory rights and that the trial court should have granted “standard
possession under the Texas Family Code Guidelines.”

A party claiming error on appeal must present a concise
argument for the contentions made with appropriate citations to authorities and
to the record.  Tex. R. App. P. 38.1(i). 
In the one paragraph devoted to this point of error, appellant fails to
provide a specific citation to any portion of the record or any legal
authority.  Instead, appellant refers
generally to argument in his second point of error.  

Appointment of a non-parent as a sole managing conservator
is a distinct inquiry from restricting a parent’s rights as a possessory
conservator.  They are governed by
separate statutory requirements.  Compare Tex. Fam. Code Ann. §§ 153.131–.138, .371–.377 (West
2008 & Supp. 2010) with Tex. Fam. Code Ann. §§ 153.191–.317
(West 2008 & Supp. 2010).  Authority
for one does not stand in for the other.

“The failure to adequately brief an issue, either by
failing to specifically argue and analyze one’s position or provide authorities
and record citations, waives any error on appeal.”  In re
B.A.B., 124 S.W.3d 417, 420 (Tex. App.—Dallas 2004, no pet.)  We hold that McPherson has waived any error
in the trial court’s restriction on his possessory right.

We overrule appellant’s third point of error.

                                                                                                                                                                   
Conclusion

We affirm the judgment of the trial court.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices Jennings, Higley, and Brown.











[1]           The settlement agreement is not a part of the appellate
record.  What information there is about
the contents of the settlement agreement is derived from testimony at the
hearing to establish conservatorship.