NO. 07-11-0031-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

NOVEMBER 15, 2012

_____


DIRECT VALUE, L.L.C. AND MARTIN F. CODY, JR., APPELLANTS

V.

STOCK BUILDING SUPPLY, L.L.C., APPELLEE

_____


FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY;

NO. C-1-CV-10-000896; HONORABLE J. DAVID PHILLIPS, JUDGE

_____


Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellants, Direct Value, L.L.C. and Martin F. Cody, Jr.,[1] appeal from a judgment

entered in favor of Appellee, Stock Building Supply, L.L.C., in its action for breach of a

---

[1]Throughout the remainder of this opinion, when we address issues related to Direct or Direct and Cody, we will refer to Appellant or Appellants as "Direct." When we address issues related to Cody only, we will refer to Appellant as "Cody." We will refer to Appellee, Stock Building Supply, L.L.C. as "SBS."

construction contract and violation of the Texas Construction Trust Act (Act)[2] following a bench trial. We affirm.

## Background

Following a bench trial, the trial court entered *Findings of Fact and Conclusions of Law* which included the following findings. On or about January 27, 2009, Jeffrey Krisel contracted with Direct, which does business as DirectBuy of Austin, to supply and install new windows at his residence. Krisel paid Direct the contract price, $34,026.74. Direct then ordered the windows, including installation, from SBS. The order was submitted to SBS by Direct's employee, B.J. Wiatrek. SBS had previously provided a quote to Direct for the new windows including installation for $33,124.25. SBS supplied and installed the windows in Krisel's home as ordered, but Direct failed to pay SBS its $33,124.25.

Cody is the manager, managing director, president and ninety percent owner of Direct. He transferred Krisel's payment from Direct's bank account to a third party instead of paying SBS. At all times, Cody had the ability and authority to direct payment to SBS if he had so chosen. In other words, Cody had control and direction over the funds paid to Direct by Krisel. At trial, SBS's attorney was permitted to testify regarding his communications with Cody while attempting to collect the debt.

In its *Conclusions of Law,* the trial court determined that (1) Direct breached its contract with SBS and (2) Cody, as a "trustee" under the Act, misapplied Krisel's funds.

---

[2]Tex. Prop. Code Ann. §§ 162.001-.033 (West 2007 and West Supp. 2012). Throughout the remainder of this opinion, we will refer to provisions of the Act simply as "section ___" or "§ ___."

The trial court entered a *Modified Final Judgment*, dated September 10, 2010, ordering that SBS recover from Direct and Cody, jointly and severally, damages in the amount of $33,124.25 and attorney's fees in the amount of $10,500.00.[3] This appeal followed.

**Discussion**

Direct contends (1) the trial court erred by awarding SBS attorney's fees against Cody when SBS failed to plead for such fees and they are not permitted under the Act, (2) the trial court permitted SBS a double recovery by not requiring that SBS elect between remedies, (3) the trial court erred by entering judgment against Cody for breach of contract when SBS failed to plead Cody breached any contract with SBS, (4) the trial court abused its discretion by permitting SBS's attorney to testify when Direct received inadequate notice the attorney was testifying and there was no evidence that the attorney's disqualification would work a substantial hardship on SBS, and (5) SBS's evidence that Direct breached its contract with SBS and Cody was a "trustee" under the Act was legally and factually insufficient. Logic dictates that we consider Direct's fifth issue first.

### I. Sufficiency of the Evidence

### A. Standard of Review

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's

---

[3]The *Modified Final Judgment* also awarded SBS recovery of additional attorney's fees in the event of an unsuccessful pursuit of an appeal.

findings.  *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex.App.--Houston [1st Dist.] 2002, pet. denied).

When a party without the burden of proof at trial challenges the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor.  *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285-86 (Tex. 1998).  If there is any evidence of probative force to support the finding, i.e., more than a scintilla, we will overrule the issue.  *Formosa Plastics Corp. USA v. Presido Eng'rs & Contractors, Inc*., 960 S.W.2d 41, 48 (Tex. 1998).

In our review of the factual sufficiency of the evidence, we must consider and weigh all of the evidence, and we will set aside a verdict only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.  *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).  We review a trial court's conclusions of law *de novo*.  *In re Moers*, 104 S.W.3d 609, 611 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd).  We independently evaluate a trial court's conclusions to determine their correctness, and we will uphold conclusions on appeal if the judgment can be sustained by any legal theory supported by the evidence*.  Id.*

### A.  Breach of Contract

Direct contends the only evidence of a contract between it and SBS is Krisel's purchase order to Direct.  We disagree.

4

At trial, David Julka, an SBS sales representative, testified that he submitted a bid to Direct for the purchase and installation of new windows at Krisel's residence. He subsequently received an e-mail from B.J. Wiatrek, a Direct employee,[4] accepting SBS's bid and directing SBS to proceed with the work. Direct's acceptance is documented by Wiatrek's e-mail which attaches the purchase order from Krisel to Direct and SBS's bid documents.[5] Julka further testified that SBS installed the windows per its agreement with Direct. Additionally, Krisel testified that he purchased windows and installation services through Direct and SBS provided and installed the windows.

Jason Delgadillo, SBS's credit manager, testified that, upon completion of the Krisel project, SBS sent an invoice to Direct in the amount of $33,124.25 for demolition and installation of Krisel's new windows. Although Krisel testified he paid Direct $34,026.74 for the project, Delgadillo testified Direct had not paid SBS's invoice for the project.

Simply, "[a] breach of contract occurs when a party fails or refuses to do something he [or she] promised to do.'" *B&W Supply, Inc. v. Beckman,* 305 S.W.3d 10, 16 (Tex.App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex.App.—Houston [14th Dist.] 2006, no pet.)). The evidence at trial showed that the essence of this transaction was that Krisel contracted with Direct for the

---

[4]Regarding Direct's assertions that Direct and DirectBuy of Austin were unrelated and Wiatrek was not Direct's employee, Direct swore in their *Responses to Interrogatories and Request for Disclosures,* that Direct did business as DirectBuy of Austin and Wiatrek was a Direct employee that communicated with SBS regarding SBS's materials.

[5]Direct asserts the trial court abused its discretion by admitting Wiatrek's e-mail and its attachments because they were inadmissible hearsay. The trial court did not abuse its discretion because the e-mail and its attachments were admissible as admissions of a party opponent. *See* Tex. R. Evid. 801(e)(2)(D). *See also Cleveland Regional Medical Center, L.P. v. Celtic Properties, L.C.,* 323 S.W.3d 322, 337 (Tex.App.—Beaumont 2010, pet. denied); *Tucker's Beverages, Inc. v. Fopay,* 145 S.W.3d 765, 767-69 (Tex.App.—Texarkana 2004, no pet.).

purchase and installation of windows at his residence and Direct contracted with SBS for the windows and their installation, i.e., Krisel was the purchaser, Direct was the contractor, and SBS was the subcontractor.  Krisel paid Direct, SBS performed the work, and Direct refused to pay SBS.

## B.  The Act – Trustee

Cody asserts he may not be held personally liable under the Act as a "trustee" because there is no evidence that he received or exercised control over any trust funds or possessed and exercised any power to direct payments.

The Act was specifically enacted to serve as a special protection for subcontractors and materialmen when contractors refuse to pay a subcontractor or materialman for labor and materials.  *Choy v. Graziano Roofing of Texas, Inc.,* 322 S.W.3d 276, 282 (Tex.App.—Houston [1st Dist.] 2009, no pet.) (citing *Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.,* 438 F.Supp.2d 696, 715 (E.D. Tex. 2006)). Because the Act is a remedial statute, courts must give it a broad construction to effectuate its protective purposes.  *Id.* (the Act should be construed liberally in favor of laborers and materialmen).  *See C & G, Inc. v. Jones*, 165 S.W.3d 450, 454 (Tex.App.--Dallas 2005, pet. denied).

Under the Act, payments made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor under a construction contract for the improvement of real property are considered trust funds.  § 162.001(a).  *See Vulcan Materials Co. v. Jack Raus*, 157 B.R. 592, 597 (Bankr. W.D. Tex. 1993) (finding that "once the owner makes payment to either the general contractor or to a subcontractor,

6

that payment gives rise to a trust for all parties in the subcontract chain"). Trust funds may only be distributed for purposes unrelated to the construction project after all current or past due obligations to the supplier beneficiaries have been paid. See § 162.031. Section 162.005 defines "current and past due obligations" as used in section 162.031 as "those obligations incurred or owed by the trustee for labor or materials furnished in the direct prosecution of the work under the construction project prior to the receipt of the trust funds and which are due and payable by the trustee no later than 30 days following receipt of the trust funds." § 162.005. Beneficiaries of the trust fund include artisans, laborers, mechanics, contractors, subcontractors, or materialmen who furnish labor or material for the construction or repair of an improvement. § 162.003.

A trustee misapplies trust funds if he or she "intentionally or knowingly or with the intent to defraud, directly or indirectly, retains, uses, disburses, or otherwise diverts trust funds without first paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust fund." § 162.031(a). Any officer or director who has control or direction over the trust funds is also a "trustee" of the funds. See § 162.002. *See also C & G, Inc.*, 165 S.W.3d at 454 (citing *Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 873 (Tex.App.--Houston [1st Dist.] 1995, writ. denied)). As such, a trustee that misapplies trust funds under the Act is subject to civil liability to trust-fund beneficiaries whom the Act was designed to protect. *Id.*

In sworn *Responses to Interrogatories and Request for Disclosures* admitted at trial, Cody and Direct described Cody as a manager, managing director and ninety percent owner of Direct. Degadillo, SBS's credit manager, testified Cody owned Direct and was the decision-maker. He testified the reason "why we went directly to him"

7

during collection was Cody "was responsible for--or had the authority to disburse the funds." In addition, SBS's business records containing computerized notations of its collection efforts indicated that nearly every SBS communication to collect the debt was with Cody who responded, requested information on the debt, and supplied excuses to SBS regarding why the debt remained unpaid. In one telephone call, Cody indicated he was seeking SBS's payment from his franchisor and final payment to SBS was dependent on the completion of a settlement between Direct and its franchisor. Cody did not personally appear at trial and his attorney presented no evidence to the contrary. Based on the evidence, we conclude that Cody was a trustee of construction trust funds under the Act. See *Nuclear Corp. of America v. Hale,* 355 F. Supp. 193, 197 (N.D. Tex. 1973), *aff'd*, 479 F.2d 1045 (5th Cir. 1973) (holding that company's president was trustee of trust funds because he had control and direction over the funds).

Direct contends that, in order to establish personal liability as a trustee, the beneficiary must prove the officer, director, or agent has the ability to sign the company's checks. Although this type of evidence has been used to establish an officer's ability to control or direct payment; *see, e.g., Choy*, 322 S.W.3d at 289, the Act does not require direct evidence of such an ability. Rather, the Act requires that a beneficiary establish that an officer, director, or agent "*directly or indirectly retains, uses, disburses, or otherwise diverts trust funds* without first fully paying all current and past due obligations." § 162.031 (emphasis added). Further, if Cody's bright-line test were allowed, any officer, director, or agent could circumvent liability under the Act by simply directing an employee without disbursement authority to sign all company checks even though an officer, director, or agent has the ultimate authority to decide whether to pay

8

a beneficiary. Such an interpretation would emasculate those provisions of the Act related to a trustee's liability leading to absurd and unintended consequences. *See Fleming Foods, Inc. v. Rylander,* 6 S.W.3d 278, 284 (Tex. 1999).

Viewing the evidence in a light most favorable to the judgment and indulging every reasonable inference in its favor, we conclude that the evidence is legally sufficient to support the challenged findings. *See Associated Indem. Corp.,* 964 S.W.2d at 285-86. In addition, considering and weighing all the evidence, we conclude that the challenged findings are not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust, and therefore the evidence in support of the challenged findings is factually sufficient. *Ortiz,* 917 S.W.2d at 772. Direct's fifth issue is overruled.

## II. Attorney's Fees

Direct asserts the trial court erred by awarding SBS its attorney's fees because such fees are not specifically recoverable under the Act[6] and SBS did not plead for them pursuant to the Act.[7] Whether a party may recover reasonable attorney's fees is a question of law for the trial court which we review *de novo. Brent v. Field,* 275 S.W.3d

---

[6]The Act does not expressly authorize an award of attorney's fees. As a general rule, attorney's fees are not recoverable in Texas unless allowed by contract or statute. *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 817 (Tex. 2006).

[7]While SBS did not plead for recovery of attorney's fees pursuant to the Act, it did plead for the recovery of attorney's fees pursuant to section 38.001 of the Texas Civil Practices and Remedies Code, which permits a person to "recover reasonable attorney fees from an individual or corporation, in addition to the amount of valid claim and costs, if *the claim* is for: (1) rendered services; (2) performed labor; [and] (3) furnished material . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 38.001(1), (2), (3) (West 2008).

9

611, 621 (Tex.App.—Amarillo 2008, no pet.) (citing *Holland v. Wal-Mart Stores, Inc.,* 1 S.W.3d 91, 94, 95 (Tex. 1999)).

Two sister courts have addressed the question of whether attorney's fees may be recovered under the Act with differing results. *See Perry & Perry Builders, Inc. v. Galvan*, No. 03-02-00091-CV, 2003 Tex. App. LEXIS 6341 (Tex.App.—Austin 2003, no pet.) (mem. op.); *Larrison v. Catalina Design*, No. 02-10-00167-CV, 2011 Tex. App. LEXIS 1196 (Tex.App.—Fort Worth 2011, no pet.) (mem. op.).

In *Perry,* the Austin Court of Appeals concluded that "attorney's fees [were] available for a claim that construction trust funds were misapplied if the relief requested is compensation for work performed or materials supplied." *Perry & Perry Builders, Inc.*, 2003 Tex. App. LEXIS 6341, at \*29. The *Perry* court reasoned that, because the relief requested for misapplication of trust funds was similar to the requested relief under the Plaintiff's *quantum meruit* theory, i.e., payment for work performed, the Plaintiff was entitled to the recovery of attorney's fees. However, because the court was reversing the misapplication recovery and remanding the claim for further proceedings, the court also reversed the attorney's fee award based in part on that theory. *Perry & Perry Builders Inc.*, 2003 Tex. App. LEXIS 6341, at \*29.

On the other hand, in *Larrison,* the Fort Worth Court of Appeals upheld the trial court's judgment finding that an inter-company transfer of trust funds, when a beneficiary had not been timely paid, was a misapplication of trust funds under the Act, 2011 Tex. App. LEXIS 1196, at \*7-10, but then denied the recovery of attorney's fees holding that "[m]isapplication of trust funds is not one of the causes of action listed in

10

section 38.001 [of the Texas Civil Practice and Remedies Code], and therefore the section does not apply to [plaintiff's] claims against Larrison." *Id.* at *15. In that case, unlike here, the Plaintiff did not bring a contract-based cause of action so the appellate court never conducted any analysis of the Plaintiff's right of recovery under that theory. Furthermore, although *Larrison* was decided after *Perry,* the *Larrison* court did not discuss or distinguish *Perry.* Here, unlike the situation in *Larrison,* SBS sought attorney's fees pursuant to section 38.001 and, as in *Perry*, recovered on both its breach of contract claim against Direct and its misapplication of trust funds claim against Cody, jointly and severally.

Additionally, this case was originally appealed to the Third Court of Appeals in Austin, and was subsequently transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* Tex. Gov't Code Ann. § 73.001 (West 2005). As such, we "must decide the case in accordance with the precedent of the transferor court." Tex. R. App. P. 41.3. Based upon this rule, as well as sound legal reasoning, we adopt the position of the Austin Court of Appeals and find that the trial court did not err in awarding SBS its attorney's fees incurred in the process of litigating its claim for misapplication of funds. Direct's first issue is overruled.

### III. Double Recovery

Direct asserts the trial court erred in entering a joint and several judgment against it for breach of contract and Cody for breach of duty because the judgment permits a double recovery.

11

The judgment of the court should be "so framed as to give the party all the relief to which he [or she] may be entitled." *Drury Southwest, Inc. v. Louie Ledeaux #1, Inc.,* 350 S.W.3d 287, 293 (Tex.App.—San Antonio 2011, pet. denied) (quoting *Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 367 (Tex. 1987)). Although a party is generally entitled to pursue damages through alternative theories of recovery, "[a] party is not entitled to double recovery." *Id.* (quoting *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.,* 959 S.W.2d 182, 184 (Tex. 1998)). "A double recovery exists when a plaintiff obtains more than one recovery for the same injury." *Id.*

Here, SBS instituted suit against Direct and Cody, individually, to recover for a single injury, i.e., the unpaid costs of its labor and material. SBS did allege alternative theories of liability against Direct for breach of contract and Cody for misapplying trust funds under the Act, however, the injury was the same in both instances. Because SBS prevailed on both theories of liability, the trial court awarded a joint and several judgment against Direct and Cody meaning either, or both, may pay the judgment, i.e., the cost of SBS's unpaid labor and materials. Under the circumstances, the trial court's joint and several judgment is proper; *see Ralls-Tex Mill, Inc. v. Plains White Truck Company, Inc.,* 446 S.W.2d 917, 918, 920 (Tex.Civ.App.--Amarillo 1969, writ ref'd n.r.e.), because it does not permit more than one recovery for SBS's single injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W.3d 768, 773 n.2 (Tex. 2009) ("application of the single injury rule does not arise unless there is more than one recovery for a single injury"). Hence, there was no need for the trial court to require SBS to elect a single remedy as Direct suggests. Direct's second issue is overruled.

12

## IV. Judgment Against Cody

Direct asserts the trial court erred in granting judgment against Cody for breach of contract. In so doing, Direct misreads the trial court's *Modified Judgment*. The *Modified Judgment* orders that "[SBS] recover from [Direct] and [Cody], jointly and severally, damages in the amount of $33,124.25, for breach of contract and breach of fiduciary duty, *respectively*." (Emphasis supplied). "Respectively" means "separately, in the order given." *Merriam-Webster's Collegiate Dictionary* 1061 (11th ed. 2003). Thus, the trial court's judgment should be read to find Direct liable for breach of contract and Cody liable for a breach of fiduciary duty. In other words, both Direct and Cody are liable for paying SBS's damages of $33.124.25, i.e., one recovery for a single injury. The *Modified Judgment* does not find Cody liable for breach of contract. Direct's third issue is overruled.

## V. Attorney Testimony

Direct asserts the trial court erred by allowing Trevor Green, SBS's attorney, to testify to a material issue at trial causing a wrongful judgment. At trial, SBS offered Green's testimony regarding his communications with Cody while attempting to collect the debt when it became apparent that Cody would neither appear nor testify at trial.

The admission of evidence is committed to the sound discretion of the trial court. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to any guiding rules or principles. *Goode v. Shoufeh,* 943 S.W.2d 441, 446 (Tex. 1997). If an appellant can show that the trial court's evidentiary ruling was in error, he or she must further show

13

that the "error probably (though not necessarily) resulted in an improper judgment." *Nissan Motor Co., Ltd. v. Armstrong,* 145 S.W.3d 131, 144 (Tex. 2004) (citing *City of Brownsville v. Alvaredo,* 897 S.W.2d 750, 753 (Tex. 1995)). In making this determination, this Court must review the entire record. Tex. R. App. P. 44.1. In doing so, we may look to the efforts made by counsel to emphasize the erroneous evidence and whether there was contrary evidence that the improperly admitted evidence was calculated to overcome. *Nissan Motor Co., Ltd.,* 145 S.W.3d at 144.

Assuming, without deciding the trial court abused its discretion, we find that SBS's counsel did not make any effort to overly emphasize Green's testimony. Furthermore, there was no contrary evidence that Green's testimony was calculated to overcome. Rather, Green's testimony was cumulative of Delgadillo's testimony. Had the trial court not permitted Green to testify, there would still be legally and factually sufficient evidence on which the trial court could base its judgment. Direct's fourth issue is overruled.

## Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

14