In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00333-CV
_____

PEGGY HARTMAN D/B/A HARTMAN HOMES, Appellant

V.

P.J. NORMAN, Appellee

On Appeal from the 136th District Court
Jefferson County, Texas
Trial Cause No. D-191,942

## MEMORANDUM OPINION

After conducting a bench trial in a breach of contract case concerning a residential construction contract, the trial court made findings of fact and conclusions of law and rendered judgment in favor of appellee, P.J. Norman. In a single issue, appellant, Peggy Hartman d/b/a Hartman Homes, complains that the trial court erred in concluding that the Texas Construction Trust Fund Act ("CTRA") imposed a duty on Hartman to provide an accounting to Norman. We affirm the trial court's judgment.

BACKGROUND

In April 2011, Norman contracted with Hartman to remodel and construct additions to her existing home for a fixed contract amount of $250,000. Norman's counsel introduced into evidence a copy of the construction contract, which did not include Hartman's signature. The contract provides that the purchase price of the project shall be set at $250,000, "subject to additions and deductions pursuant to authorized change orders and allowances." The contract specifies that all change orders to the original plan "need to be agreed upon, including cost, additional time considerations, approximate dates when the work will begin and be completed, a legal description of the location where the work will be done and signed by both parties." The contract provides that "[t]he Owner will make payments to the contractor pursuant to the attached construction draw schedule as work required by said schedule is satisfactorily completed." The contract further provides that if "payment is not received by the Contractor within (3 days) . . . after delivery of payment demand for work satisfactorily completed, contractor shall have the right to stop work or terminate the contract at his option."

In February 2012, Norman filed suit against Hartman, alleging that Hartman had breached the contract by failing to complete the renovations as provided in the contract. Specifically, Norman alleged that after she paid Hartman over $200,000,

Hartman had only completed a small portion of the renovations they agreed upon. Norman requested that Hartman provide an accounting of the monies spent on the renovations. Norman pleaded that Hartman never provided an accounting and failed to finish the renovations, so Norman was forced to hire a new contractor to finish the project. Norman sought actual damages and attorney's fees. Hartman filed an answer denying Norman's allegations and a counter-petition alleging that Norman breached the contract by failing to abide by its terms, thereby prohibiting Hartman from completing the project.

During trial, Norman testified that the construction project included adding approximately 5500 square feet to her current home, and that the scope of the work included building a three-car garage, a garage for a forty-foot motorhome, and a pool house, as well as adding two bedrooms and two bathrooms, remodeling a bathroom, and knocking out a wall. Norman testified that she provided Hartman with two sets of plans that showed the work that needed to be done, and Hartman gave her a contract indicating that Hartman could complete the job for $250,000. According to Norman, Hartman's bid included both sets of plans, and while the second set of plans included additional square footage, Norman maintained that she did not significantly change the square footage of the job after receiving Hartman's bid.

Norman testified that she paid a $50,000 deposit before Hartman began construction, and that the deposit was part of the purchase price of the project. Norman explained that although Hartman did not present her with a construction draw schedule indicating when payments were to be paid, Norman paid Hartman an additional $150,000. Norman testified that she paid Hartman a total of $200,000 without ever seeing a draw schedule indicating the percentage of work that Hartman had completed. Norman also testified that she did not question Hartman because they were friends and she thought Hartman was honest.

Norman explained that during construction, she had made a few changes to the original plans. Concerning the bathroom remodel, Norman's changes included painting the bathroom, upgrading to a Jacuzzi tub, and updating the bathroom light fixtures. Norman's other changes included extending her closet out to the end of the garage, switching to French doors in the breakfast room, and constructing a fence, an outdoor fireplace, and a brick wall to cover the pool equipment. Norman testified that she and Hartman never discussed the cost of the change orders or put them in writing, but Norman estimated that the value of those changes was approximately $6000.

Norman testified that after she paid Hartman $200,000, Hartman requested an additional $50,000, and at that point, Norman asked Hartman to provide an

accounting. According to Norman, before signing the contract, Hartman had assured her that Hartman could provide an accounting at any point during construction. Norman explained that she asked for the accounting because, based on the work that had been completed, she did not believe that Hartman had spent $200,000 on her home. Norman testified that she interpreted the phrase "satisfactorily completed" to mean that she needed to be satisfied with the work that had been done before she released the final payment. Norman explained that she withheld the final payment because, based on the progress of the job, she did not believe that Hartman had done enough work. According to Norman, in asking for an accounting, she was requesting that Hartman provide her with the construction draw schedule so she could determine what percentage of work had actually been completed.

Norman maintained that she complied with the contract when she requested an accounting. Norman testified that Hartman never provided an accounting of invoices for the $200,000; instead, Hartman provided an invoice for add-ons, some of which Norman disputed. Norman also testified that she never agreed to verbally make change orders under the contract. Norman explained that after she and Hartman argued over the accounting, she refused to give Hartman more money, and Hartman walked off and never finished the job. Norman maintained that she wanted

Hartman to finish the job, but she had to pay other contractors to complete the project.

Norman presented evidence showing that it cost her $236,677.51 to finish the job after Hartman left, and she testified that other than some changes to the cabinetry in the master bathroom, she finished the project just as Hartman would have. Norman sought damages amounting to the difference between the amount she paid contractors to finish the job and the amount she would have paid Hartman under the contract.

Hartman testified that she bid the project on the first set of plans, which did not include a shop or the garage for the motorhome. Hartman explained that she had the second set of plans before she started the build, but the cost of the changes was to be in addition to the original contract price. According to Hartman, the changes added approximately 1700 square feet to the project. Hartman explained that she told Norman that the changes were going to be additional, and Norman told her that she would take care of it at the end of the job.

Hartman testified that the original copy of her contract with Norman, which was not admitted into evidence, included an additional written provision called "Verbalizations of Agreement[]" that allowed Norman to verbally make change orders during the course of construction. Hartman testified that the original contract

6

did not contain a provision requiring change orders to be in writing, and Norman made verbal change orders that modified the contract. According to Hartman, Norman verbally agreed to pay for the changes, which Hartman estimated as costing an additional $50,000. Hartman testified that she trusted Norman because they had a verbal agreement and because they had worked together on other projects.

Hartman testified that when she asked Norman for the final $50,000 under the contract, Norman told Hartman that she would have to pay for the construction out of her own pocket. According to Hartman, she told Norman that it was not part of the deal and that she was unable to do so. Hartman testified that when Norman asked for an accounting, Hartman presented Norman with an invoice for the extra changes. Hartman explained that she had no obligation to provide Norman with an accounting and show Norman her invoices, because the job was a flat bid and not based on a percentage.

Hartman testified that she left the job after Norman refused to pay her the final $50,000 under the contract. Hartman explained that a construction draw schedule was never written, and she believed the contract term "satisfactorily completed" applied to her as well as Norman in regard to whether the subcontractors had finished their jobs and been paid. Hartman agreed that she left the project before it was completed and voided the contract and that she did not spend more than $200,000

7

on the work that she completed. Hartman submitted an accounting after the lawsuit was filed showing that she had spent approximately $188,000 of the $200,000 she had been paid on the job. Hartman testified that she could have finished the job for $300,000.

The trial court issued findings of fact and conclusions of law. The trial court made the following findings of fact:

1. On April 6, 2011, the plaintiff and defendant entered into a written, fixed price construction contract for remodeling the plaintiff's residence and building certain additions.

2. The agreed price for the construction was $250,000.00.

3. The contract called for an initial $50,000.00 payment prior to commencement of construction which the plaintiff complied with.

4. The contract further provided for progress payments to be made pursuant to a draw schedule upon "satisfactory completion[."] No draw schedule was ever created, however.

5. Pursuant to the contract any change orders were to be in writing and signed by the parties.

6. Both the plaintiff and defendant acknowledged that there were changes made to the project plans after construction began[] but, contrary to the contract, were not reduced to writing.

7. By July 2011, the defendant had been paid $200,000.00 out of the original contract price of $250,000.00. At or near that time, the defendant told the plaintiff that, due to the additional work and materials, she could not finish the project and requested payment of the remaining $50,000.00.

8. In response to defendant's request, the plaintiff asked for an accounting.

9. The defendant refused to provide plaintiff with an accounting, taking the position that she was not required to do so for a fixed price contract.

10. When plaintiff failed to release the final $50,000.00, the defendant abandoned the project.

11. As a result of the defendant terminating work, the plaintiff hired another contractor and completed the project.

12. In the defendant's opinion, the total cost for the project, including changes, would have been $300,000.00.

13. At the time the defendant terminated the project, there were no outstanding balances owed to any subcontractors or material suppliers.

14. In order to complete the project, the plaintiff spent $236,667.51.

15. Based on the defendant's completion cost figure, the plaintiff incurred $136,667.51 in additional costs.

. . . .

Concerning the duty to provide an accounting, the trial court made the following conclusions of law:

1. The defendant had a duty to provide plaintiff with an accounting[].

2. In the absence of an accounting, there was no demonstration that portions of the contract had been "satisfactorily completed[."]

3. As a result of the defendant's refusal to provide an accounting demonstrating "satisfactory completion[,"] the plaintiff was under

9

no duty to release any funds and was, therefore, justified in withholding the last remaining funds.

4. The plaintiff, having rightly withheld the remaining construction funds, the defendant breached the contract by abandoning the project.

5. As a result of the defendant's breach, the plaintiff should have recovery in the amount of $136,667.51.

The trial court entered a final judgment awarding Norman $136,667.51 in damages due to Hartman's breach of contract. This appeal followed.

## ANALYSIS

In a single issue, Hartman contends the trial court erred by concluding that she had a duty to provide Norman with an accounting because the parties signed a fixed-price residential construction contract that did not include any accounting provisions. According to Hartman, the trial court incorrectly applied the CTFA by finding that the act imposed a duty on the contractor to provide the owner with an accounting prior to the release of additional construction funds when no such duty is found in the plain text of the statute. Hartman maintains that she was not the breaching party because she had no duty to provide Norman with an accounting and that she was justified under the terms of the contract in stopping work due to Norman's refusal to make a requested payment. Norman argues that the trial court's interpretation is correct because the CTFA clearly requires Hartman to keep and

10

maintain an accounting and the contract requires construction draws to be paid only on proof that the work has been "satisfactorily completed," and there is no way to determine the "satisfactorily completed" portion of the contract without Hartman providing an accounting.

We review a trial court's conclusions of law *de novo*. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We evaluate the trial court's legal conclusions to determine whether the trial court correctly drew the legal conclusions from the facts. *Id.* We will uphold the trial court's conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Kenny v. Portfolio Recovery Assocs., LLC*, 464 S.W.3d 29, 32 (Tex. App. Houston [1st Dist.] 2015, no pet.). We also review a trial court's interpretation of a statute *de novo*. *City of Houston v. Bates*, 406 S.W.3d 539, 543 (Tex. 2013). In interpreting a statute, a court's primary objective is to give effect to the Legislature's intent. *Id.*

Hartman challenges the trial court's first conclusion of law which states that "[t]he defendant had a duty to provide plaintiff with an accounting[]." The trial court included the following footnote that included the provisions of the Property Code that supported its first conclusion of law:

> Tex. Prop. Code §162.006 (contractor entering into a written contract for improvement to residential property in excess of $5,000.00 must deposit funds in a construction account at a financial institution); §162.007 (contractor must maintain record of deposits and

dates/amounts/receipts of disbursements; contractor must retain invoices/supporting documents relating to disbursements); §162.003 (property owner for residential construction is a beneficiary of provisions of §162 Tex. Prop. Code).

Under the CTFA, construction payments made to a contractor under a construction contract for the improvement of specific real property are considered trust funds. Tex. Prop. Code Ann. § 162.001(a) (West 2014). A contractor who receives trust funds is a trustee of the trust funds. *Id.* § 162.002 (West 2014). "A contractor who enters into a written contract with a property owner to construct improvements to a residential homestead for an amount exceeding $5,000 shall deposit the trust funds in a construction account in a financial institution." *Id.* § 162.006(a) (West 2014). A property owner is a beneficiary of trust funds in connection with a residential construction contract, including funds deposited into a construction account. *Id.* § 162.003(b) (West 2014).

A contractor who is required to maintain a construction account under the CTFA shall maintain an account record for the construction account that provides information concerning the source and amount of funds in the account and the date they were deposited, the date and amount of each disbursement from the account and the person to whom the funds were disbursed, and the current balance of the account. *Id.* § 162.007(a) (West 2014). The contractor's duty to maintain an account record for the construction project includes keeping all invoices and other supporting

documentation concerning the disbursement of funds from the construction account. *Id.* § 162.007(b), (c) (West 2014). The trust fund scheme's intent is to ensure that funds paid for a construction project reach the people or companies providing labor and materials for the project; a property owner is also a beneficiary of the trust funds. *See id.* §§ 162.003(a), (b), 162.031; *see also Direct Value, L.L.C. v. Stock Bldg. Supply, L.L.C.*, 388 S.W.3d 386, 391 (Tex. App.—Amarillo 2012, no pet.).

While the parties' written contract is a fixed price contract, the record shows that Norman verbally made changes to the contract during the course of construction, increasing the cost of construction. The record shows that the parties disagree concerning the extent of the changes made to the contract and the cost of those changes, and although required by the contract, the parties did not agree upon the cost of the proposed changes or on the dates those changes were to be completed prior to making the change orders. The parties also did not have a construction draw schedule, as required by the contract, to show when Norman was to make payments for work that had been satisfactorily completed or to show the scope of the work that had been satisfactorily completed.

Because of the parties' course of conduct during the project, which included making change orders that increased the fixed contract amount to an amount that was disputed by the parties, the trial court properly concluded that without an

accounting, there was no way for Hartman to demonstrate which portions of the contract had been satisfactorily completed. Under the contract, Norman was required to make progress payments as work required by the construction draw schedule was satisfactorily completed. Although Norman testified that she had made $200,000 in payments without seeing a draw schedule, Norman testified that when Hartman asked her to pay the final $50,000 payment under the contract without providing a draw schedule showing the work that had been satisfactorily completed, Norman disputed whether the scope of the work that Hartman had completed justified her releasing the final payment.

Under the CTFA, Hartman had a duty to deposit the trust funds she received from Norman in a construction account, and Hartman remained a beneficiary of the deposited trust funds. *See* Tex. Prop. Code Ann. §§ 162.003(b), 162.006(a). Because the CTFA's intent is to ensure that construction trust funds are paid to the people and companies providing labor and materials to the project, as a beneficiary of those trust funds, Norman had an interest in ensuring that Hartman was utilizing the funds for her construction project. *See id.* §§ 162.003(a), (b), 162.031; *see also Direct Value, L.L.C.*, 388 S.W.3d at 391. Norman testified that based on the work completed when Hartman requested additional payment under the contract, she did not believe that Harman had spent the funds on her project, and Norman testified

14

that she disputed some of the add-ons included in Hartman's invoice, claiming that some of the work had been done at her sister's home. *See Weinberger v. Longer*, 222 S.W.3d 557, 563-65 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (finding that contractor failed to perform the contract as promised and had charged homeowner for unrelated labor and materials after considering evidence from the contractor's accounting that was provided at homeowner's request).

Based on the record, the trial court properly concluded that Norman was justified in withholding the last remaining funds due to Hartman's refusal to provide an accounting demonstrating satisfactory completion. We conclude the evidence supports the trial court's conclusion that Hartman had a duty to provide Norman with an accounting. We overrule Hartman's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on August 9, 2017
Opinion Delivered October 19, 2017

Before McKeithen, C.J., Horton and Johnson, JJ.

15